

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOEL DOE, a minor; by and through his Guardians JOHN DOE and JANE DOE, | Case No. ___ 17  1249 |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| BOYERTOWN AREA SCHOOL DISTRICT; DR. RICHARD FAIDLEY, in his official capacity as Superintendent of the Boyertown Area School District; DR. BRETT COOPER, in his official capacity as Principal; and DR. E. WAYNE FOLEY, in his official capacity as Assistant Principal. | **JURY TRIAL REQUESTED** <br><br> **FILED** <br> **MAR 2 1 2017** <br> **KATE BARKMAN, Clerk** <br> By_____Dep. Clerk |
| Defendants. | |

## COMPLAINT

Plaintiff Joel Doe, a minor, by and through his Guardians John Doe and Jane Doe, state as follows:

1. This case is about the intentional violation of a child's fundamental right to bodily privacy contrary to constitutional and statutory principles, including the Fourteenth Amendment, Title IX, invasion of seclusion, and the Pennsylvania's Public School Code of 1949, which requires separate facilities on the basis of sex.

### JURISDICTION AND VENUE

2. This action arises under 42 U.S.C. §§ 1983 *et seq.* (the "Civil Rights Act") to redress the deprivation of rights secured by the Fourteenth Amendment to the United States Constitution, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), the Pennsylvania Constitution and common law, and the Public School Code of 1949.



3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1361, and 1367.

4. The Court has jurisdiction to issue the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

5. The Court has jurisdiction to award nominal and compensatory damages under 28 U.S.C. § 1343(a)(4).

6. The Court has jurisdiction to award reasonable attorneys' fees and costs under 28 U.S.C. § 2412, 42 U.S.C. § 1988.

7. Venue lies in this district pursuant to 28 U.S.C. § 1391(b) and (e), because a substantial part of the events or omissions giving rise to all claims occurred in this district where the District Defendant is located.

8. This Court has personal jurisdiction over Defendants because they are domiciled in Pennsylvania.

## PARTIES

### *Plaintiff*

9. Plaintiff and his Guardians are citizens of the United States and residents of Pennsylvania.

10. Plaintiff Joel Doe is a minor boy. He is a student who began his junior year at Boyertown Area High School, a public high school in the Boyertown Area School District, in August of 2016. Because Joel Doe is a minor, this action is

brought on his behalf by and through his legal guardians.

### *Defendant Boyertown Area School District*

11.    Boyertown Area School District ("Boyertown SD" or "District") is organized under the laws of the Commonwealth of Pennsylvania.

12.    The District includes public educational institutions that provide students a kindergarten through 12th-grade education.

13.    The District and its schools receive federal funds and so are subject to the requirements of Title IX.

14.    District schools include seven K-6 elementary schools, two 7-9 junior high schools, and one senior high school serving grades 10, 11 and 12.

15.    Boyertown SD is governed by the Board of School Directors (the "School Board"), a nine-member elected body that sets policy for the District and delegates responsibility for the administration of the District to its Superintendent of Schools, who oversees a number of district-level administrators.

16.    District Defendant is responsible for the enforcement of policies through its Superintendent, administrators, teachers, and other employees.

### *Defendant Superintendent Dr. Richard Faidley*

17.    Defendant Faidley is the current Superintendent of Boyertown SD and is sued in his official capacity. At all times relevant to the events described herein, Superintendent Faidley acted within the scope of his employment as an employee,

3

agent, and representative of the School Board. In such capacity, he implemented a new policy in which student(s) of one sex are permitted to enter and use restrooms, locker rooms and shower facilities designated for members of the opposite sex. Upon information and belief, he did so with the consent, knowledge, or ratification of the School Board; under the School Board's authority, control, and supervision; and with the actual or apparent authority of the School Board. Upon information and belief, Superintendent Faidley has final policymaking authority for Boyertown SD in circumstances not otherwise provided for in the School District Bylaws and Policies.

### *Defendant Principal Dr. Brett Cooper*

18.    Defendant Cooper is the current Principal of Boyertown Area High School and is sued in his official capacity. In such capacity, he implemented a new policy in which student(s) of one sex are permitted to enter and use restrooms, locker rooms and shower facilities designated for members of the opposite sex. Upon information and belief, he did so with the consent, knowledge, or ratification of the School Board; under the School Board's authority, control, and supervision; and with the actual or apparent authority of the School Board. Upon information and belief, Principal Cooper has final policymaking authority for Boyertown Area High School with respect to the day-to-day enforcement of the District's policies, including the newly adopted policy or practice permitting students of one sex to

4

enter and use private facilities like restrooms, locker rooms and shower facilities with members of the opposite sex.

### *Defendant Assistant Principal Dr. E. Wayne Foley*

19.     Defendant Foley is the current Assistant Principal of Boyertown Area High School and is sued in his official capacity. In such capacity, he implemented a new policy in which student(s) of one sex are officially authorized to enter and use restrooms, locker rooms, and shower facilities designated for members of the opposite sex. Upon information and belief, he did so with the consent, knowledge or ratification of the School Board; under the School Board's authority, control, and supervision; and with the actual or apparent authority of the School Board. Upon information and belief, Assistant Principal Foley has final policymaking authority for Boyertown Area High School with respect to the day-to-day enforcement of the District's policies, including the newly adopted policy or practice permitting students of one sex to enter and use private facilities like restrooms, locker rooms and shower facilities with members of the opposite sex.

### INTRODUCTION

20.     The importance of privacy has long been considered central to our western notions of freedom: a measure of personal isolation and personal control over the conditions of privacy's abandonment is of the very essence of personal freedom and dignity.

5

21.     Defendants purposefully violated Plaintiff's privacy rights and further attempted to harass and coerce the minor Plaintiff into further privacy violations.

22.     No student should be forced to use multi-user private facilities at school, like locker rooms and restrooms, with students of the opposite sex. No school district ought to violate its students' constitutional and statutory rights, especially when it means abandoning a common sense practice that long protected every student's privacy and access to education. Yet the Defendants have taken precisely these actions in this case.

23.     The term "sex" refers to one's biological/anatomical status as either male or female.

24.     Sex is fixed at conception, binary, objectively verifiable, and rooted in our human reproductive nature.

25.     The Defendants secretly authorized a student of the opposite sex to have unrestricted access to enter and use boys' private facilities.

26.     Upon information and belief, Defendants' policy is grounded in gender identity theory, which asserts that a person's subjective perception of their own "gender" should be more important in every conceivable setting than sex, one's biological/anatomical status as either male or female.

27.     Under gender identity theory, gender is subjectively assumed, not objectively verifiable, exists on a continuum, and is sometimes fluid.

6

28.     By adopting gender identity theory as the basis for regulating access to private facilities, Defendants are violating sex discrimination law by not protecting students based on sex but instead imposing an individual's subjective perception of their gender on other students who value their privacy based on anatomical differences between the sexes.

29.     This practice has had a severe and negative impact on Plaintiff.

30.     Plaintiff has experienced embarrassment and humiliation, both in terms of being viewed and viewing a student of the opposite sex in a state of undress and because of the stigmatization and criticism he received from other students and adults, fueled by the administration's policy and actions. He also fears the future embarrassment of meeting students of the opposite sex in the bathroom when simply relieving himself. He now avoids using the restroom during the school day because of the ongoing risk of having his privacy violated.

31.     Because of the district's policy and actions, Plaintiff does not feel secure in the locker rooms or restrooms that are properly set aside for the exclusive use of boys to protect their privacy from exposure to members of the opposite sex.

32.     The actions and policy violates Plaintiff's fundamental right to bodily privacy, Title IX, intrusion upon seclusion, as well as Pennsylvania law requiring separate facilities at our public schools.

33.     Plaintiff asks this Court to declare the Defendants' policy and actions

7

unlawful, and order the other relief requested herein.

## FACTUAL BACKGROUND

34.     Joel Doe is a student at Boyertown Area High School, where he is enrolled in a physical education ("PE") course.

35.     PE is a mandatory course at the District and is a requirement to graduate.

36.     It is mandatory that students in PE class change into clothing appropriate for PE class.

37.     The PE locker rooms have signs which indicate they are either for girls or for boys.

38.     Joel Doe has always used the boys' locker room and bathrooms because his sex is male.

39.     Joel Doe had a reasonable expectation that he would have privacy in the locker rooms and bathrooms in the school from viewing members of the opposite sex or from being viewed by members of the opposite sex.

40.     On or about October 31, 2016, Joel Doe began changing in the locker room for PE class, and when he was standing in his underwear about to put his gym clothes on, he suddenly realized there was a member of the opposite sex changing with him in the locker room, who was at the time wearing nothing but shorts and a bra.

8

41.     Joel  Doe  experienced  immediate  confusion,  embarrassment, humiliation, and loss of dignity upon finding himself in this circumstance and quickly put his clothes on and left the locker room.

42.     Joel Doe, along with various classmates, went to speak to the Assistant Principal, Dr. Foley, after gym class to let him know what had happened.

43.     Joel Doe informed Dr. Foley that there was a girl in their locker room. Dr. Foley indicated that the legality was up in the air but that students who mentally identify themselves with the opposite sex could choose the locker room and bathroom to use, and physical sex did not matter.

44.     Joel Doe asked whether there was anything that Dr. Foley could do to protect him from this situation.

45.     Dr. Foley responded that there was nothing he could do and he did not know what the end result will be.

46.     Dr. Foley told Joel Doe to "tolerate" it and make it as "natural" as he possibly can.

47.     Prior to Joel Doe leaving, Dr. Foley repeated himself a second time as Joel Doe was leaving the office, telling him again to be as "natural" as possible.

48.     The District intentionally and purposefully caused Joel Doe's privacy to be violated.

49.     Boyertown School District did not inform Joel Doe or his Guardians,

9

John Doe and Jane Doe, before this incident that they were permitting students of one sex to enter locker rooms and bathrooms of students of the opposite sex.

50.     Boyertown School District had not informed Joel Doe or his Guardians that despite the words on locker room and restroom doors, they would no longer protect Joel Doe's expectation of privacy from viewing or being viewed by members of the opposite sex when he is present in multi-user private facilities such as bathrooms and locker rooms.

51.     The District's directive to Joel Doe was that he must change with students of the opposite sex, and make it as natural as possible, and that anything less would be intolerant and bullying against students who profess a gender identity with the opposite sex.

52.     After Joel Doe's privacy was violated, the District's actions marginalized and shamed Joel Doe, and unlawfully attempted to coerce and intimidate Joel Doe into accepting continuing violations of his bodily privacy.

53.     The anxiety, embarrassment, and stress he feels as a direct result of Defendants' practice and actions has caused him to refrain from using restrooms as much as possible, stress about when and if he can use a given restroom without running into persons of the opposite sex, and opting to hold his bladder rather than using the school's restroom. This has caused an ever-present distraction throughout the school day, including during class instructional time.

10

54.     Failing to timely void urine has direct and adverse physiological effects, and the Defendants' policy inhibits Joel Doe from timely voiding.

55.     Joel Doe's Guardians made an appointment to speak with the assistant principal shortly thereafter, and met with Defendant Dr. Foley on or about November 2, 2016.

56.     Joel Doe's Guardians explained how Joel Doe's bodily privacy had been violated by the District's actions and sought answers to ensure it did not happen again. It was then that Dr. Foley indicated that the school district is "all-inclusive" and that if Joel Doe had a problem changing or using restrooms with people of the opposite sex, he would get him permission to go to the nurse's office to change.

57.     Joel Doe's Guardians subsequently met with Dr. Cooper, the principal of Boyertown High School to voice their concerns. Dr. Cooper was condescending to Joel Doe's Guardians and stated that he would not do anything because Joel Doe can simply change in the nurse's office from now on if he does not want to change around people of the opposite sex.

58.     By mandating that Joel Doe use a nurse's office to change if he wants privacy, Defendants have prevented him from using the facilities that, by state and federal law, are provided for use solely by males and that are required to ensure that students of one sex have their privacy protected from members of the opposite sex.

11

59.     The District further marginalized, intimidated and shamed Joel Doe, by contacting the Principal at the Vo-Tech school, Berks Career and Technology School – Oley Campus (BCTS), where Joel Doe also attended half of the day, to disclose the fact that Joel Doe had gone to the Assistant Principal over the violation of his bodily privacy.

60.     On or about November 2, 2016, just two days after the incident where Plaintiff's right to privacy was violated, the principal of BCTS, Mr. Jenkins, pulled Joel Doe out of class to have what Mr. Jenkins called a "casual conversation" about the incident at Boyertown High School and stated "he wanted to make sure none of that negativity was going to happen at his school."

61.     Joel Doe felt harassed, shamed, and bullied by Boyertown School District's publication to BCTS about the incident and his concerns.

62.     Joel Doe's Guardians scheduled a meeting with the Defendant Superintendent Dr. Faidley, and Dr. Faidley indicated that if Joel Doe was uncomfortable changing with those of the opposite sex, or with using the nurse's office, then he could just withdraw from school and be home schooled, while still attending Vo-tech if he wished.

63.     The District's actions have forced Joel Doe to stop changing for PE class, which has resulted in disciplinary action and poor grades by only receiving half of the day's credit for participating in street clothes rather than gym clothes.

64.     Joel Doe feels violated, humiliated, and embarrassed by the invasion of privacy.

65.     Because of the privacy violation, as well as the District's subsequent actions, Joel Doe also experiences anxiety, stress, intimidation, fear, apprehension and loss of dignity.

66.     These daily persistent feelings of anxiety, stress, humiliation, embarrassment, apprehension, distress, and violation of privacy stay with Joel Doe and impact him throughout the day, distracting him from instructional time.

67.     Plaintiff is suffering and will continue to suffer irreparable harm because of the Defendants' actions.

68.     Plaintiff has no adequate remedy at law.

## ALLEGATIONS OF LAW

### FIRST CAUSE OF ACTION (ALL DEFENDANTS): VIOLATION OF THE FUNDAMENTAL RIGHT TO PRIVACY IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION 42 U.S.C. § 1983

69.     Plaintiff realleges all matters set forth above and incorporate them herein.

70.     The Fourteenth Amendment protects citizens against violation of fundamental rights by state actors.

71.     Fundamental rights are liberty interests deeply rooted in the nation's

13

history and tradition and implicit in the concept of ordered liberty.

72.     Joel Doe has a fundamental right to bodily privacy that, at a minimum, includes protection from intimate exposure of his body and intimate activities to a person of the opposite sex. It also includes the corollary protection from intimate exposure to a female's body or intimate activities.

73.     The fundamental right to bodily privacy as to persons of the opposite sex is deeply rooted in the nation's history and tradition and has been recognized as flowing from the United States Constitution as well as federal and state statutory and common law. *See, e.g., Doe v. Luzerne County*, 660 F.3d 169, 176 n.5 (3d Cir. 2011) (holding that a person has a privacy interest in his or her "partially clothed body," recognized by various sister circuits, and arising out of the Fourteenth Amendment); *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 621 (3d Cir. 1992) (recognizing that the collection of urine sample may constitute an invasion of privacy if "it involves the use of one's senses to oversee the private activities of another" since the performance in public of such activities are "generally prohibited by law as well as social custom" and failure to regard privacy "could constitute a substantial and highly offensive intrusion upon seclusion").

74.     The fundamental right to bodily privacy is also implicit in the concept of ordered liberty because a government that compels its citizens to disrobe or attend to intimate activities in the presence of the opposite sex violates the core of

14

personal liberty, and it deprives its citizens of the full benefits afforded to its citizens when it conditions those benefits on surrendering the right to bodily privacy.

75.     Throughout its history, American law and society has had a national commitment to protecting citizens, and especially children, from suffering the risk of exposing their bodies, or their intimate activities, to the opposite sex.

76.     Our understanding of personal privacy from persons of the opposite sex is so universal as to require the use of separate facilities on the basis of sex in all kinds of contexts. *See* Public School Code of 1949, 24 P.S. § 7-740 (requiring that facilities "shall be suitably constructed for, and used separately by the sexes"). *See also* 43 P.S. § 109 (requiring application of industrial sanitation code to all employers, which involves separate restrooms); 7 Pa. Code § 1.57 (requiring separate facilities for meat packers); 7 Pa. Code § 78.75 (separate restrooms at eating establishments); 7 Pa. Code § 82.9 (requiring separate facilities on the basis of sex for seasonal farm labor, "distinctly marked 'for men' and 'for women' by signs printed in English and in the native languages of the persons" using those facilities); 28 Pa. Code § 18.62 (requiring "separate dressing facilities, showers, lavatories, toilets and appurtenances for each sex" at swimming pools); 25 Pa. Code § 171.16 (requiring schools to follow the provisions of the Public Bathing Law (35 P. S. § § 672—680d) and 28 Pa. Code Chapter 18 (relating to swimming and bathing

15

places); 28 Pa. Code §19.21 (requiring separate restrooms on the basis of sex at camps); 28 Pa. Code § 205.38 (requiring separate restrooms at long term care facilities); 31 Pa. Code § 41.121 (requiring separate facilities for each sex on railroads); 31 Pa. Code § 41.122 (requiring separate bathrooms to be provided for each sex and clearly designated and forbidding any person to use or frequent a toilet room assigned to the opposite sex); 31 Pa. Code § 47.127 (same); 34 Pa. Code § 403.28 (requiring restrooms for each sex); 43 Pa. Code § 41.24 (designating the entrance of "retiring rooms" to be clearly marked by sex and preventing opposite sex entry); 43 Pa. Code § 41.31 (requiring separate toilet rooms "for each sex" which shall be clearly designated and that "no person shall be permitted to use or frequent a toilet room assigned to the opposite sex"); 43 Pa. Code § 41.32 (requiring partitions separating toilet rooms on account of sex, which shall be "soundproof").

77. The importance of personal privacy is also recognized in the context of discrimination law, and specifically in the situation that Plaintiff faces. *See, e.g., Livingwell, Inc. v. Pennsylvania Human Relations Com.*, 606 A.2d 1287, 1290 (Pa. Commw. Ct. 1992) (citing *City of Philadelphia v. Pa. Human Relations Com.*, 300 A.2d 97 (Pa. Commw. Ct. 1973), and recognizing that employers may hire on the basis of sex to vindicate "a juvenile's 'privacy interest'" that "would be violated if required to . . . disrobe and shower in front of a staff member of the opposite sex"). "[W]here there is a distinctly private activity involving exposure of intimate body

16

parts, there exists an implied bona fide public accommodation qualification which may justify otherwise illegal sex discrimination. Otherwise . . . such sex segregated accommodations such as bathrooms, showers and locker rooms, would have to be open to the public." *Id.* at 1291.

78.     "The standard for recognizing a privacy interest as it relates to one's body is not limited to protecting one where there is an exposure of an 'intimate area,' but such a right may also be recognized where one has a reasonable basis to be protected against embarrassment or suffer a loss of dignity because of the activity taking place." *Id.* "To hold otherwise would mean that separate changing rooms in factories, mines and construction sites where workers change from street clothes to work clothes and back and where 'intimate areas' are not exposed, would not be permitted." *Id.* at 1293 n.6.

79.     Personal privacy is also recognized in the context of criminal law. *See, e.g., id.* at 1289 (quoting 18 Pa.C.S. § 5901 to make the point that "certain conduct . . . between genders is inappropriate. For example, it is a misdemeanor to commit open lewdness because those who observe it 'would be affronted or alarmed.'"). *See also* 18 Pa.C.S.A. § 7507.1 (regarding viewing or filming a person in a state of undress without their consent in a place where a person "would have a reasonable expectation of privacy"); 18 Pa.C.S.A. § 3127 (regarding the exposure of genitalia in circumstances where a person should know that it "is likely to offend, affront or

17

alarm").

80. Criminal protections are heightened for children. *See, e.g.,* § 3127(b) (increasing the severity of an indecent exposure charge based on age).

81. While pornography involving only adults is legal and cannot be constitutionally banned, it is illegal to possess, distribute, or even view images of naked children. *See* 18 Pa.C.S.A. § 6312.

82. Nearly every state has a law criminalizing "sexting," which is when a minor sends a naked picture of himself or herself via electronic means. *See, e.g.,* 18 Pa.C.S.A. § 6321.

83. Because of our national commitment to protect our citizens, and especially children, from the risk of being exposed to the anatomy of the opposite sex, as well as the risk of being seen by the opposite sex while attending to private, intimate needs, sex-separated restrooms and locker rooms are ubiquitous in public places.

84. Using public restrooms and locker rooms separated by sex are an American social and modesty norm.

85. Historically, purposefully entering a restroom or locker room designated for the opposite biological sex has been considered wrongful, and even criminal, behavior.

86. Freedom from the risk of compelled intimate exposure to the opposite

18

sex, especially for minors, is deeply rooted in this Nation's history and tradition.

87.    It is also implicit in the concept of ordered liberty.

88.    The ability to disrobe absent the presence of the opposite sex, along with the freedom to use the restroom absent the presence of the opposite sex is fundamental to most people's sense of self-respect and personal dignity.

89.    If the government were granted the far-reaching and extreme power to compel its citizens to disrobe or risk being unclothed in the presence of the opposite sex, then little personal liberty involving our bodies would be left.

90.    Because freedom from the risk of compelled exposure to the opposite biological sex, especially for minors, is deeply rooted in this nation's history and tradition and implicit in the concept of ordered liberty, it is a fundamental right. *See Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).

91.    Specifically: minors have a fundamental right to be free from State compelled risk of exposure of their bodies, or their intimate activities, such as occur within restrooms and locker rooms, to the opposite biological sex.

92.    An abridgement of fundamental rights is presumptively unconstitutional and can only be justified if it survives strict scrutiny under which the law must serve a compelling state interest by the most narrowly tailored means.

93.    The Defendants' actions and practice violated Doe's fundamental right to privacy because it allowed a biological female into the boys' locker room and

19

subjected Doe to undressing in front of someone of the opposite sex, who was herself also in a state of undress.

94.     Shocked and distressed, Doe met with Defendant Dr. Foley.

95.     When Doe asked to be protected from the situation, Dr. Foley told him that there was nothing he could do and that instead, he and his friends would have to share the boys' locker room with a person of the opposite sex. They were told to tolerate it and make it as natural as possible.

96.     Even though after Jane Doe and John Doe got involved, Doe was told that he could use the nurse's office to change for gym class, he was still required to enter the locker room in order to safely store his belongings. This would still subject Doe to viewing a person of the opposite sex in state of undress.

97.     Moreover, the policy harms Doe because unless he surrenders his right to bodily privacy, he can no longer use the locker room designed for use by boys.

98.     While the Public School Code of 1949 requires that facilities "shall be suitably constructed for, and used separately by, the sexes," 24 P.S. § 7-740, Defendants' policy violates the requirement of separate facilities and denies Doe the right to use such a facility, instead conditioning the use of the "boys'" locker room on surrendering Doe's right to bodily privacy from persons of the opposite sex. *See also* 25 Pa. Code § 171.7 (requiring separate facilities "for each sex" in schools). *Accord* 22 Pa. Code § 55.2 (same for private elementary schools); 22 Pa. Code § 57.2(a)

(same for private secondary schools); 22 Pa. Code § 59.34(a) (same for private special education schools).

99. Plaintiff and his Guardians on multiple occasions brought up the policy with the Assistant Principal, the Principal, and the Superintendent, but their requests for a change in the District's policy were denied.

100. Doe and his guardians were told that the school was no longer going to discuss this issue with them or any parents.

101. Doe ultimately decided to not change for gym class, which resulted in failing each gym class.

102. The Defendants have no compelling interest to justify this violation Doe's right to bodily privacy from persons of the opposite sex.

103. The violation of this right is particularly acute where, as here, his right was first violated without any notice or consent in a place traditionally--and by state statute--reserved for persons of one biological sex.

104. The violation was ongoing because it compromises the most intimate aspects of human affairs and involves a setting traditionally (and by state law) reserved for persons of one biological sex. It effectively denies the appropriate use of this setting in a manner conveying sexual harassment and official bullying, and which is otherwise inconsistent with deeply rooted notions of fundamental personal interests in personal privacy from persons of the opposite biological sex.

21

105. Defendants failed to employ the least restrictive means of serving any interest that they may later articulate.

106. Accordingly, the actions and practice fail strict scrutiny review and are unconstitutional.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## SECOND CAUSE OF ACTION (ALL DEFENDANTS): VIOLATION OF TITLE IX

107. Plaintiff realleges all matters set forth above and incorporate them herein.

108. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

109. The School District is a federal funding recipient for purposes of Title IX.

110. Courts have given Title IX broad effect in order to combat sex discrimination in the educational setting.

111. There is an implied right of action for a student to sue his school and school officials under Title IX.

112. Defendants' authorizing people to use restrooms or locker rooms that

are designated for the opposite biological sex violates privacy and creates a sexually harassing hostile environment.

113. Unconsented exposure to persons of the opposite-sex in various states of undress creates a sexually harassing hostile environment.

114. The policy of the school is to allow those who self-identify with the opposite biological sex to choose to use locker rooms and restrooms that are designated for the opposite biological sex.

115. Joel Doe does not object to students of the same sex using private facilities with him, no matter how they self-identify, and he has no expectation of privacy from such students.

116. This policy needlessly subjects Doe to the risk that his partially unclothed body will be exposed to the opposite sex and that he will be exposed to a partially clothed person of the opposite-sex, as actually occurred when the policy was first implemented.

117. As a result, Doe experienced embarrassment, humiliation, frustration, degradation, and loss of dignity.

118. Doe has been marginalized by other students on account of his objection to the policy.

119. Doe is avoiding the restroom as a result of the fear and apprehension of embarrassment, humiliation, degradation, and loss of dignity he may experience

23

in the restroom.

120. Doe has altogether ceased using the locker room because of the legitimate fear that he will again be in a state of undress or exposed to an opposite sex student in a state of undress.

121. Doe cannot store his clothes in the locker room since that would again put him in the locker room where he may be exposed to an opposite sex student in a state of undress.

122. Doe is now taking a failing grade every day he does not change.

123. The policy violates Title IX because it intentionally produces unwelcome sexual harassment and creates a hostile environment on the basis of sex and denies access to educational programs and benefits.

124. In order to make out a Title IX claim: (1) plaintiff must be subjected to sexual harassment; (2) the harassment must be severe, pervasive, and objectively offensive; (3) the school must be deliberately indifferent to the harassment; and (4) the harassment must result in the denial of access.

125. Doe satisfies all elements.

126. First, Doe was subjected to harassment because the practice allows biological females to use the boys' locker rooms and restrooms, which creates a harassing hostile environment specifically on the basis of the sex of the persons involved.

24

127. Differences in anatomy is the only reason for separate facilities. Were there no differences in anatomy, there would be no privacy interests justifying separate facilities in the first place.

128. These differences do not disappear when biological females self-identify as males, and vice versa.

129. Neither state nor federal law obligates Defendants to provide multi-user private facilities based on what a student wears, whom the student is sexually attracted to, how the student presents or identifies him or herself, or based on whether a student identifies with their sex or with the opposite sex.

130. The anatomical differences between the sexes is the reason that Title IX and its implementing regulations allow for separate living facilities, restrooms, locker rooms, and changing areas for each biological sex.

131. Title IX and its implementing regulations provide for separate living facilities, restrooms, locker rooms, and changing areas for each biological sex based on the recognition that permitting a person of one biological sex to enter and use the facilities designated for the opposite sex would be sexually harassing.

132. The policy, which opens the boys' restrooms and locker rooms to biological females, is harassment based on the boys' sex.

133. Doe experienced humiliation, degradation, and loss of dignity and fears the same in the future as a result of the policy and practice.

25

134. It is the significant and real anatomical differences between the biological sexes that creates the hostile environment, which is harassment.

135. Second, the harassment is severe, pervasive, and objectively offensive.

136. Letting biological females use the boys' restrooms and locker rooms places the bodily privacy of both sexes at risk, and so is sufficiently egregious to satisfy the severity prong.

137. The harassment is ongoing and continuous, preventing Doe from using the locker room and discouraging him from using the restrooms, thus satisfying the pervasiveness prong.

138. The environment is one that a reasonable person would find hostile and objectively offensive, and one that Doe in fact perceives to be so.

139. The objective unreasonableness is evident in the fact that we have long recognized the right to a private setting, free from persons of the opposite sex, when in a state of undress or performing private functions.

140. This principle is recognized in numerous areas of the law, as stated above.

141. Third, school officials are not only on notice of the hostile environment, but it is the Defendants' policy that establishes and sustains the hostile environment.

142. Moreover, Plaintiff and his Guardians repeatedly notified the

26

individual Defendants, who then told Plaintiff and his Guardians that this is what the school will be doing as a matter of policy.

143. The Defendants have authority to rescind their policy which would resolve the hostile environment created by that policy.

144. Despite their knowledge that their practice is creating a hostile environment based on sex, the Defendants have not remedied the situation.

145. Instead, these officials have advised that, if Doe perceives the environment to be hostile, Doe should remove himself from it by using the nurse's office.

146. Schools cannot escape liability for Title IX violations by requiring the victim of harassment to remove himself from the hostile environment or otherwise suggesting that he is responsible for the harassment he endures.

147. The nurse's office "accommodation" creates a separate but unequal facility that violates Title IX.

148. Fourth, Doe has been effectively denied the use of facilities that are to be provided, pursuant to state and federal law, on account of his biological sex.

149. This has resulted in his inability to change and store his belongings in the locker room, thus resulting in failing grades during each day of gym class.

150. Defendants' policy and actions violate Title IX by creating a hostile environment on the basis of sex.

27

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## THIRD CAUSE OF ACTION (ALL DEFENDANTS):
## INVASION OF PRIVACY - INTRUSION UPON SECLUSION

151. Plaintiff realleges all matters set forth above and incorporate them herein.

152. Defendants purposely opened up the boys' locker room and restroom to a biological female who identified as a male.

153. As a result, Doe found himself in only his underwear in the presence of a biological female, who was wearing nothing above her waist other than a bra.

154. One's partially clothed body is a private affair, particularly with regards to a member of the opposite sex.

155. Defendants' practice, therefore, caused Doe's private affairs to be intruded upon by being viewed by someone of the opposite sex and intruded upon his privacy by forcing him to be at a place to see a partially clothed female body.

156. Laws and social custom have long protected our right to be free from undressing in the view of someone of the opposite sex and to be free from viewing someone of the opposite sex undressing.

157. In particular, laws applicable to public schools require separate facilities on the basis of sex, which has always been understood to mean on the basis of biological/anatomical sex.

28

158.   Defendants' practice failed to give due regard to Doe's privacy.

159.   Therefore, the circumstances in which Doe found himself, particularly in a setting designed to be private with regards to persons of the opposite sex, would be highly offensive to the ordinary reasonable person.

160.   Doe lacks ongoing access to the boy's locker room and is discouraged in his use of the boy's restroom as a result of this invasion of seclusion.

161.   Additionally, Doe has been receiving failing grades in gym class due to this invasion of seclusion.

WHEREFORE, Plaintiff respectfully prays that the Court grant the relief set forth hereinafter in the Prayer for Relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and/or severally, as follows:

A.   A declaration that the Defendants' actions and practice violates Plaintiff's constitutional right to privacy.

B.   A declaration that Defendants' actions were a violation of the Pennsylvania School Code of 1949.

C.   A declaration that Defendants committed an unlawful intrusion upon Plaintiff's seclusion and bodily privacy rights.

D.   A declaration that the Defendants' actions and practice impermissibly

burdens Plaintiff's rights under Title IX to be free from discrimination on the basis of sex by creating a sexually harassing hostile environment.

E.    A permanent injunction enjoining the District Defendants' policy and ordering the District Defendants to permit only females to enter and use the District's girls' private facilities, including locker rooms and restrooms, and only males to enter and use the boys' private facilities, including locker rooms and restrooms.

F.    An award of compensatory damages for the violation of Plaintiff's constitutional and statutory rights;

G.    An order that this Court retain jurisdiction of this matter for the purpose of enforcing any Orders;

H.    An award of Plaintiff's costs and expenses of this action, including a reasonable attorneys' fees award, in accordance with 28 U.S.C. § 2412, 42 U.S.C § 1988;

I.    All other relief to which Plaintiff may show himself to be entitled, including attorneys' fees and costs of court.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and issues so triable.

Respectfully submitted this 21st day of March, 2017.

By: /s/ Randall L. Wenger

30

CATHY R. GORDON, PA 56728*
JACOB KRATT, PA 316920
**LITCHFIELD CAVO LLP**
420 Fort Duquesne Blvd., Suite 600
Pittsburgh, PA 15222
412-291-8246
412-586-4512 Fax
gordonc@litchfieldcavo.com
kratt@litchfieldcavo.com

RANDALL L. WENGER, PA 86537
Jeremy L. Samek, PA 205060*
**INDEPENDENCE LAW CENTER**
23 North Front St.
Harrisburg, Pennsylvania
(717) 657-4990
(717) 545-8107 Fax
rwenger@indlawcenter.org
jsamek@indlawcenter.org

JORDAN LORENCE, MN 0125210**
KELLIE FIEDOREK, DC 1015807 FL
74350**
ALLIANCE DEFENDING FREEDOM
440 First St. NW, Suite 600
Washington, DC 20001
(202) 393-8690
jlorence@ADFlegal.org
kfiedorek@ADFlegal.org

GARY S. MCCALEB, AZ 018848**
**ALLIANCE DEFENDING FREEDOM**
15100 N. 90th St.
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
gmccaleb@ADFlegal.org

*Application for Admission Forthcoming

**\*\*Pro Hac Vice** Applications Forthcoming

*Attorneys for Plaintiff*

31