JOEL DOE, a minor; by and through his Guardians JOHN DOE and JANE DOE; MARY SMITH; JACK JONES, a minor; by and through his Parents JOHN JONES and JANE JONES; and MACY ROE

      Plaintiffs,

      vs.

BOYERTOWN AREA SCHOOL DISTRICT; DR. RICHARD FAIDLEY, in his official capacity as Superintendent of the Boyertown Area School District; DR. BRETT COOPER, in his official capacity as Principal; and DR. E. WAYNE FOLEY, in his official capacity as Assistant Principal.

      Defendants.

Case No. 17-1249-EGS

**AMENDED VERIFIED COMPLAINT**

**JURY TRIAL REQUESTED**

## AMENDED VERIFIED COMPLAINT

Plaintiffs Joel Doe, a minor, by and through his guardians John Doe and Jane Doe; Mary Smith; Jack Jones, a minor, by and through his parents John Jones and Jane Jones; and Macy Roe state as follows:

1. This case is about the intentional violation of students' fundamental right to bodily privacy contrary to constitutional and statutory principles, including the Fourteenth Amendment, Title IX, invasion of seclusion, and the Pennsylvania's Public School Code of 1949, which requires separate facilities on the basis of sex.

## JURISDICTION AND VENUE

2. This action arises under 42 U.S.C. §§ 1983 *et seq.* (the "Civil Rights Act")

to redress the deprivation of rights secured by the Fourteenth Amendment to the United States Constitution, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), the Pennsylvania Constitution and common law, and the Public School Code of 1949.

3.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1361, and 1367.

4.     The Court has jurisdiction to issue the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

5.     The Court has jurisdiction to award nominal and compensatory damages under 28 U.S.C. § 1343(a)(4).

6.     The Court has jurisdiction to award reasonable attorneys' fees and costs under 28 U.S.C. § 2412, 42 U.S.C. § 1988.

7.     Venue lies in this district pursuant to 28 U.S.C. § 1391(b) and (e), because a substantial part of the events or omissions giving rise to all claims occurred in this district where the District Defendant is located.

8.     This Court has personal jurisdiction over Defendants because they are domiciled in Pennsylvania.

## PARTIES

### *Plaintiffs*

9.     Plaintiffs and their family members are citizens of the United States and residents of Pennsylvania.

10.     Plaintiff Joel Doe is a minor boy.  He is a student who began his junior year at Boyertown Area High School, a public high school in the Boyertown Area

School District, in August of 2016. Because Joel Doe is a minor, this action is brought on his behalf by and through his legal guardians.

11.    Plaintiff Mary Smith is an 18 year old girl. She is a student who began her junior year at Boyertown Area High School, a public high school in the Boyertown Area School District, in August of 2016.

12.    Plaintiff Jack Jones is a minor boy. He is a student who began his junior year at Boyertown Area High School, a public high school in the Boyertown Area School District, in August of 2016. Because Jack Jones is a minor, this action is brought on his behalf by and through his parents.

13.    Plaintiff Macy Roe is an 18 year old girl. She is a student who began her senior year at Boyertown Area High School, a public high school in the Boyertown Area School District, in August of 2016.

*Defendant Boyertown Area School District*

14.    Boyertown Area School District ("Boyertown Area SD" or "District") is organized under the laws of the Commonwealth of Pennsylvania.

15.    The District includes public educational institutions that provide students a kindergarten through 12th-grade education.

16.    The District and its schools receive federal funds and so are subject to the requirements of Title IX.

17.    District schools include seven K-6 elementary schools, two 7-9 junior high schools, and one senior high school serving grades 10, 11 and 12.

18.    The District is governed by the Board of School Directors (the "School

Board"), a nine-member elected body that sets policy for the District and delegates responsibility for the administration of the District to its Superintendent of Schools, who oversees a number of district-level administrators.

19.     District Defendant is responsible for the enforcement of policies through its Superintendent, administrators, teachers, and other employees.

### Defendant Superintendent Dr. Richard Faidley

20.     Defendant Faidley is the current Superintendent of the District and is sued in his official capacity.  At all times relevant to the events described herein, Superintendent Faidley acted within the scope of his employment as an employee, agent, and representative of the School Board.  In such capacity, he implemented a new policy in which students of one sex are permitted to enter and use restrooms, locker rooms and shower facilities designated for members of the opposite sex.  Upon information and belief, he did so with the consent, knowledge, or ratification of the School Board; under the School Board's authority, control, and supervision; and with the actual or apparent authority of the School Board.  Upon information and belief, Superintendent Faidley has final policymaking authority for the District in circumstances not otherwise provided for in the School District Bylaws and Policies.

### Defendant Principal Dr. Brett Cooper

21.     Defendant Cooper is the current Principal of Boyertown Area High School and is sued in his official capacity.  In such capacity, he implemented a new policy in which students of one sex are permitted to enter and use restrooms, locker rooms and shower facilities designated for members of the opposite sex.  Upon

4

information and belief, he did so with the consent, knowledge, or ratification of the School Board; under the School Board's authority, control, and supervision; and with the actual or apparent authority of the School Board. Upon information and belief, Principal Cooper has final policymaking authority for Boyertown Area High School with respect to the day-to-day enforcement of the District's policies, including the newly adopted policy or practice permitting students of one sex to enter and use private facilities like restrooms, locker rooms and shower facilities with members of the opposite sex.

### Defendant Assistant Principal Dr. E. Wayne Foley

22.    Defendant Foley is the current Assistant Principal of Boyertown Area High School and is sued in his official capacity. In such capacity, he implemented a new policy in which student(s) of one sex are officially authorized to enter and use restrooms, locker rooms, and shower facilities designated for members of the opposite sex. Upon information and belief, he did so with the consent, knowledge or ratification of the School Board; under the School Board's authority, control, and supervision; and with the actual or apparent authority of the School Board. Upon information and belief, Assistant Principal Foley has final policymaking authority for Boyertown Area High School with respect to the day-to-day enforcement of the District's policies, including the newly adopted policy or practice permitting students of one sex to enter and use private facilities like restrooms, locker rooms and shower facilities with members of the opposite sex.

# INTRODUCTION

23.     The importance of privacy has long been considered central to our western notions of freedom: a measure of personal isolation and personal control over the conditions of privacy's abandonment is of the very essence of personal freedom and dignity.

24.     Defendants purposefully violated Plaintiffs' privacy rights and further attempted to harass and coerce the Plaintiffs into further privacy violations.

25.     No student should be forced to use multi-user private facilities at school, like locker rooms and restrooms, with students of the opposite sex. No school district ought to violate its students' constitutional and statutory rights, especially when it means abandoning a common sense practice that long protected every student's privacy and access to education. Yet the Defendants have taken precisely these actions in this case.

26.     A woman's right to bodily privacy does not spring into existence, or cease to exist, depending on what a man believes about the nature of his own internal sense of "gender identity." Her right to bodily privacy is hers and hers alone.

27.     A man's right to bodily privacy does not spring into existence, or cease to exist, depending upon what a woman believes about the nature of her own internal sense of "gender identity." His right to bodily privacy is his and his alone.

28.     The term "sex" refers to one's biological/anatomical status as either male or female.

29.     Sex is fixed at conception, binary, objectively verifiable, and rooted in

our human reproductive nature.

30. The Defendants, without parent or student notification, authorized multiple students to have unrestricted access to enter and use the private facilities of the opposite sex.

31. Upon information and belief, Defendants' policy is grounded in gender identity theory, which asserts that a person's subjective perception of his or her own "gender" should prevail over one's biological sex as either male or female.

32. Under gender identity theory, gender is subjectively ascertained, not objectively verifiable, exists on a continuum, and is sometimes fluid.

33. By adopting gender identity theory as the basis for regulating access to private facilities, Defendants are violating sex discrimination law by not protecting students based on sex but instead imposing an individual's subjective perception of their gender on other students who value their privacy based on anatomical differences between the sexes.

34. This practice has had a severe and negative impact on Plaintiffs.

35. Plaintiff Joel Doe has experienced embarrassment and humiliation, both in terms of being viewed and viewing a student of the opposite sex in a state of undress and because of the stigmatization and criticism he received from other students and adults, fueled by the administration's policy and actions. He feels stress, intimidation, apprehension and distress throughout his day knowing that to obtain an education he must attend to his most personal needs in private facilities unprotected from the entrance, presence, or exposure of a female. He also fears the

future embarrassment of meeting students of the opposite sex in the locker room while changing or while using the bathroom. He now avoids using these spaces because of the ongoing risk of having his privacy violated.

36. Plaintiff Jack Jones has experienced embarrassment and humiliation, since being viewed by a student of the opposite sex in a state of undress, fueled by the administration's policy and actions. He feels stress, intimidation, apprehension and distress throughout his day knowing that to obtain an education he must attend to his most personal needs in private facilities unprotected from the entrance, presence, or exposure of a female. He also fears the future embarrassment of meeting students of the opposite sex in the locker room while changing or while using the bathroom. He now avoids using these spaces because of the ongoing risk of having his privacy violated.

37. Mary Smith has experienced embarrassment and humiliation, since viewing a student of the opposite sex in the female restrooms, fueled by the administration's policy and actions. She feels stress, intimidation, apprehension and distress throughout her day knowing that to obtain an education she must attend to her most personal needs in private facilities unprotected from the entrance, presence, or exposure of a male. She also fears the future embarrassment of meeting students of the opposite sex in the locker room while changing or while using the bathroom. She now avoids using these spaces because of the ongoing risk of having her privacy violated.

38. Macy Roe experiences anxiety, stress, intimidation, apprehension and

distress throughout her day knowing that to obtain an education she must attend to her most personal needs in private facilities unprotected from the entrance, presence, or exposure of a male. She fears the future embarrassment of meeting students of the opposite sex in the locker room while changing or while using the bathroom. She now avoids using these spaces because of the ongoing risk of having her privacy violated.

39.     Because of the district's policy and actions, Plaintiffs do not feel secure in the locker rooms or restrooms that are properly set aside for the exclusive use of members of one sex to protect their privacy from exposure to members of the opposite sex.

40.     Joel Doe, Mary Smith, Jack Jones, and Macy Roe do not object to students of the same sex using private facilities with them, and welcomes them no matter how they self-identify their gender, and they have no expectation of privacy from such students.

41.     Defendants' policy and actions violate Plaintiffs' fundamental right to bodily privacy, Title IX, intrusion upon seclusion, as well as Pennsylvania law requiring separate facilities at our public schools.

42.     Plaintiffs ask this Court to declare the Defendants' policy and actions unlawful and order the other relief requested herein.

## FACTUAL BACKGROUND

*Plaintiff – Joel Doe*

43.     Joel Doe is a student at Boyertown Area High School, where he is enrolled in a physical education ("PE") course.

9

44.     PE is a mandatory course at the District and is a requirement to graduate.

45.     It is mandatory that students in PE class change into clothing appropriate for PE class.

46.     The PE locker rooms have signs which indicate they are either for girls or for boys.

47.      Joel Doe has always used the boys' locker room and bathrooms because his sex is male.

48.     Joel Doe has a reasonable expectation of privacy in the locker rooms and bathrooms in the school from viewing members of the opposite sex or from being viewed by members of the opposite sex.

49.     Joel Doe absolutely does not object to students of the same sex using private facilities with him regardless of how they may subjectively self-identify their gender, and he has no expectation of privacy from members of the same sex.

50.     On or about October 31, 2016, Joel Doe began changing in the locker room for PE class, and when he was standing in his underwear about to put his gym clothes on, he suddenly realized there was a member of the opposite sex changing with him in the locker room, who was at the time wearing nothing but shorts and a bra.

51.     Joel Doe experienced immediate confusion, embarrassment, humiliation, and loss of dignity upon finding himself in this circumstance and quickly put his clothes on and left the locker room.

52.     Joel Doe, along with various classmates, went to speak to the Assistant Principal, Dr. Foley, after gym class to let him know what had happened.

53.     Joel Doe informed Dr. Foley that there was a girl in their locker room. Dr. Foley indicated that the legality of the practice was up in the air but that students who "mentally" identify with the opposite sex could choose the locker room and bathroom to use, and physical sex did not matter.

54.     Joel Doe asked whether there was anything that Dr. Foley could do to protect him from this situation.

55.     Dr. Foley responded that there was nothing he could do and he did not know what the end result will be.

56.     Dr. Foley told Joel Doe to "tolerate" it and make it as "natural" as he possibly can.

57.     Prior to Joel Doe leaving, Dr. Foley repeated himself a second time as Joel Doe was leaving the office, telling him again to be as "natural" as possible.

58.     The District intentionally and purposefully caused Joel Doe's privacy to be violated.

59.     The District did not inform Joel Doe or his Guardians, John Doe and Jane Doe, before this incident that they were permitting students of one sex to enter locker rooms and bathrooms of students of the opposite sex.

60.     The District had not informed Joel Doe or his Guardians that despite the signs on locker room and restroom doors designating boys' use, they would no longer protect Joel Doe's expectation of privacy from viewing or being viewed by

members of the opposite sex when he is present in multi-user private facilities such as bathrooms and locker rooms.

61.     The District's directive to Joel Doe was that he must change with students of the opposite sex and make it as natural as possible and that anything less would be intolerant and bullying against students who profess a gender identity with the opposite sex.

62.     After Joel Doe's privacy was violated, the District's actions marginalized and shamed Joel Doe, and unlawfully attempted to coerce and intimidate Joel Doe into accepting continuing violations of his bodily privacy.

63.     The anxiety, embarrassment, and stress he feels as a direct result of Defendants' practice and actions has caused him to refrain from using restrooms as much as possible, stress about when and if he can use a given restroom without running into persons of the opposite sex, and opting to hold his bladder rather than using the school's restroom. This has caused an ever-present distraction throughout the school day, including during class instructional time.

64.     Failing to timely void urine has direct and adverse physiological effects, and the Defendants' policy inhibits Joel Doe from timely voiding.

65.     Joel Doe's guardians made an appointment to speak with the assistant principal shortly thereafter, and met with Defendant Dr. Foley on or about November 2, 2016.

66.     Joel Doe's guardians explained how Joel Doe's bodily privacy had been violated by the District's actions and sought answers to ensure it did not happen

again. It was then that Dr. Foley indicated that the school district is "all-inclusive" and that if Joel Doe had a problem changing or using restrooms with people of the opposite sex, he would get him permission to go to the nurse's office to change.

67. Joel Doe's guardians subsequently met with Dr. Cooper, the principal of Boyertown Area High School to voice their concerns. Dr. Cooper was condescending to Joel Doe's guardians and stated that he would not do anything because Joel Doe can simply change in the nurse's office from now on if he does not want to change around people of the opposite sex.

68. By mandating that Joel Doe use a nurse's office to change if he wants privacy, Defendants have prevented him from using the facilities that, by state and federal law, are provided for use solely by males and that are required to ensure that students of one sex have their privacy protected from members of the opposite sex.

69. The District further marginalized, intimidated and shamed Joel Doe, by contacting the principal at the Vo-Tech school, Berks Career and Technology School – Oley Campus (BCTS), where Joel Doe also attended half of the day, to disclose the fact that Joel Doe had gone to the Assistant Principal over the violation of his bodily privacy.

70. On or about November 2, 2016, just two days after the incident where Plaintiff's right to privacy was violated, the principal of BCTS, Mr. Jenkins, pulled Joel Doe out of class to have what Mr. Jenkins called a "casual conversation" about the incident at Boyertown Area High School and stated "he wanted to make sure none of that negativity was going to happen at his school."

71.     Joel Doe felt harassed, shamed, and bullied by the District's publication to BCTS about the incident and his concerns.

72.     Joel Doe's guardians scheduled a meeting with the Defendant Superintendent Dr. Faidley, and Dr. Faidley indicated that if Joel Doe was uncomfortable changing with those of the opposite sex, or with using the nurse's office, then he could just withdraw from school and be home schooled, while still attending Vo-tech if he wished.

73.      The District's actions have forced Joel Doe to stop changing for PE class, which has resulted in disciplinary action and poor grades by only receiving half of the day's credit for participating in street clothes rather than gym clothes.

74.     Joel Doe feels violated, humiliated, and embarrassed by the invasion of privacy.

75.     Because of the privacy violation, as well as the District's subsequent actions, Joel Doe also experiences anxiety, stress, intimidation, fear, apprehension and loss of dignity.

76.     These daily persistent feelings of anxiety, stress, humiliation, embarrassment, apprehension, distress, and violation of privacy stay with Joel Doe and impact him throughout the day, distracting him from instructional time.

77.     Joel Doe is suffering and will continue to suffer irreparable harm because of the Defendants' actions.

78.     Joel Doe has no adequate remedy at law.

*Plaintiff – Jack Jones*

14

79.     Jack Jones is a student at Boyertown Area High School, where he is enrolled in a physical education ("PE") and Health course.

80.     PE is a mandatory course at the District and is a requirement to graduate.

81.     It is mandatory that students in PE class change into clothing appropriate for PE class.

82.     The PE locker rooms have signs which indicate they are either for girls or for boys.

83.      Jack Jones has always used the boys' locker room and bathrooms because his sex is male.

84.     Jack Jones has a reasonable expectation of privacy in the locker rooms and bathrooms in the school from viewing members of the opposite sex or from being viewed by members of the opposite sex.

85.     Jack Jones absolutely does not object to students of the same sex using private facilities with him regardless of how they may subjectively self-identify their gender, and he has no expectation of privacy from members of the same sex.

86.     On or about the first week of November, 2016, Jack Jones began changing in the locker room for PE class, and when he was standing in his underwear about to put his gym clothes on, he saw classmates gesturing and looking at something behind him.  When he turned, he saw a member of the opposite sex in the locker room with him, while he was in his underwear.

87.     Jack     Jones     experienced     immediate     confusion,     embarrassment,

humiliation, and loss of dignity upon finding himself in this circumstance and quickly put his clothes on and left the locker room.

88.    The District had not informed Jack Jones or his parents that despite the signs on locker room and restroom doors designating boys' use, they would no longer protect Jack Jones' expectation of privacy from viewing or being viewed by members of the opposite sex when he is present in multi-user private facilities such as bathrooms and locker rooms.

89.    Jack Jones informed his parents of how his privacy was violated, and Jane Jones called and spoke to Dr. Cooper, relaying the violation of privacy that occurred to her son and asking for such infractions to stop.

90.    Dr. Cooper told Jane Jones that as far as the law is concerned, he has to permit girls that identify as boys to use private facilities with her son. Dr. Cooper did not offer any single-user facility for Jack Jones to use as an alternative.

91.    Jack Jones feels violated, humiliated, and embarrassed by the invasion of privacy.

92.    Because of the privacy violation as well as the District's subsequent actions, Jack Jones also experiences anxiety, stress, intimidation, fear, apprehension and loss of dignity.

93.    The anxiety, embarrassment, and stress he feels as a direct result of Defendants' policy and actions has caused him to refrain from using restrooms as much as possible, stress about when and if he can use a given restroom without running into persons of the opposite sex, and opting to hold his bladder rather than

using the school's restroom. This has caused an ever-present distraction throughout the school day, including during class instructional time.

94.     Failing to timely void urine has direct and adverse physiological effects, and the Defendants' policy inhibits Jack Jones from timely voiding.

95.     These daily persistent feelings of anxiety, stress, humiliation, embarrassment, apprehension, distress, and violation of privacy stay with Jack Jones and impact him throughout the day, distracting him from instructional time.

96.     Jack Jones is suffering and will continue to suffer irreparable harm because of the Defendants' actions.

97.     Jack Jones has no adequate remedy at law.

*Plaintiff – Mary Smith*

98.     Mary Smith is a student at Boyertown Area High School.

99.     In March, 2017, Mary Smith entered a girls' bathroom in the High School, and saw a male student washing hands in the sink.

100.    The bathrooms have signs which indicate they are either for girls or for boys.

101.    Mary Smith has always used the girls' locker room and bathrooms because her sex is female.

102.    Mary Smith has a reasonable expectation of privacy in the locker rooms and bathrooms in the school from viewing members of the opposite sex or from being viewed by members of the opposite sex.

103.    Mary Smith absolutely does not object to students of the same sex using

17

private facilities with her regardless of how they may subjectively self-identify their gender, and she has no expectation of privacy from members of the same sex.

104.    Mary Smith experienced immediate shock, confusion and embarrassment, and went to report the incident to the school office.

105.    Mary Smith was told she'd have to come back later to talk with a principal.

106.    Mary Smith used another restroom near the office after ensuring nobody else was in it, because it was an emergency.

107.    When Mary Smith returned to the office, she reported the incident to Dr. Foley.  It was then that Mary Smith learned for the first time that the school was now permitting members of the opposite sex to use the girls' bathrooms.

108.    Dr. Foley told her that even though the student's sex is male, the student could now use restrooms or locker rooms with her since he identifies as a girl.

109.    Mary Smith told Dr. Foley that she had never heard this was happening and inquired whether the School ever told her parents about this.  Dr. Foley responded that they had not told parents about this but he believed the school might be working on that.

110.    Dr. Foley did not offer her any other options for her to use restrooms or locker rooms outside the presence of male students, whether the nurse's office or otherwise.

111.    The District had not informed Mary Smith or her parents that despite the signs on locker room and restroom doors designating girls' use, they would no

longer protect Mary Smith's expectation of privacy from viewing or being viewed by members of the opposite sex when she is present in multi-user private facilities such as bathrooms and locker rooms.

112.    Mary Smith feels violated, humiliated, and embarrassed by the invasion of her privacy.

113.    The anxiety, embarrassment, and stress she feels as a direct result of Defendants' practice and actions has caused her to refrain from using restrooms as much as possible, stress about when and if she can use a given restroom without running into persons of the opposite sex, and opting to hold her bladder rather than using the school's restroom. This has caused an ever-present distraction throughout the school day, including during class instructional time.

114.    Failing to timely void urine has direct and adverse physiological effects, and the Defendants' policy inhibits Mary Smith from timely voiding.

115.    These daily persistent feelings of anxiety, stress, humiliation, embarrassment, apprehension, distress, and violation of privacy stay with Mary Smith and impact her throughout the day, distracting her from instructional time. Mary Smith is suffering and will continue to suffer irreparable harm because of the Defendants' actions.

116.    Mary Smith takes PE, and is required to take PE next year.  She does not currently have persons of the opposite sex in her locker room, but has persistent feelings of anxiety, stress, apprehension and distress that a person of the opposite sex might enter the locker room when she is using it.

19

117. As a result of the stress and anxiety caused by Defendant's actions and the new policy, she has determined that she will not return to the Boyertown Area School District for her senior year.

118. Mary Smith would continue going to school at Boyertown Area High School were it not for the District's actions infringing on her right to use girls' restrooms and girls' locker rooms outside of the presence of members of the opposite sex.

119. Mary Smith has no adequate remedy at law.

*Plaintiff – Macy Roe*

120. Macy Roe is a student at Boyertown Area High School.

121. The bathrooms have signs which indicate they are either for girls or for boys.

122. Macy Roe has always used the girls' locker room and bathrooms because her sex is female.

123. Macy Roe has a reasonable expectation of privacy in the locker rooms and bathrooms in the school from viewing members of the opposite sex or from being viewed by members of the opposite sex.

124. Macy Roe absolutely does not object to students of the same sex using private facilities with her regardless of how they may subjectively self-identify their gender, and she has no expectation of privacy from members of the same sex.

125. The District had not informed Macy Roe that despite the signs on locker room and restroom doors designating girls' use, they would no longer protect Macy

Roe's expectation of privacy from viewing or being viewed by members of the opposite sex when she is present in multi-user private facilities such as bathrooms and locker rooms.

126. The anxiety and stress she feels as a direct result of Defendants' practice and actions has caused her to refrain from using restrooms as much as possible, stress about when and if she can use a given restroom without running into persons of the opposite sex, and opting to hold her bladder rather than using the school's restroom. This has caused an ever-present distraction throughout the school day, including during class instructional time.

127. Failing to timely void urine has direct and adverse physiological effects, and the Defendants' policy inhibits Macy Roe from timely voiding.

128. These daily persistent feelings of anxiety, stress, humiliation, embarrassment, apprehension, distress, and violation of privacy stay with Macy Roe and impact her throughout the day, distracting her from instructional time.

129. Macy Roe is suffering and will continue to suffer irreparable harm because of the Defendants' actions.

## ALLEGATIONS OF LAW

### FIRST CAUSE OF ACTION (ALL DEFENDANTS): VIOLATION OF THE FUNDAMENTAL RIGHT TO PRIVACY IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION 42 U.S.C. § 1983

130. Plaintiffs reallege all matters set forth above and incorporate them herein.

131.    The Fourteenth Amendment protects citizens against violation of fundamental rights by state actors.

132.    Fundamental rights are liberty interests deeply rooted in the nation's history and tradition and implicit in the concept of ordered liberty.

133.    Plaintiffs have a fundamental right to bodily privacy that, at a minimum, includes an expectation of privacy in bathrooms and locker rooms from the presence of members of the opposite sex, protection from intimate exposure of their bodies and intimate activities to a person of the opposite sex, and includes the corollary protection from intimate exposure by a person of the opposite sex.

134.    A woman's right to bodily privacy does not spring into existence, or cease to exist, depending on what a man believes about the nature of his own internal sense of "gender identity." Her right to bodily privacy is hers and hers alone.

135.    A man's right to bodily privacy does not spring into existence, or cease to exist, depending upon what a woman believes about the nature of her own internal sense of "gender identity." His right to bodily privacy is his and his alone.

136.    The fundamental right to bodily privacy as to persons of the opposite sex is deeply rooted in the nation's history and tradition and has been recognized as flowing from the United States Constitution as well as federal and state statutory and common law. *See, e.g., Doe v. Luzerne County*, 660 F.3d 169, 176 n.5 (3d Cir. 2011) (holding that a person has a privacy interest in his or her "partially clothed body," recognized by various sister circuits, and arising out of the Fourteenth Amendment); *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 621 (3d Cir. 1992)

(recognizing that the collection of urine samples may constitute an invasion of privacy if "it involves the use of one's senses to oversee the private activities of another" since the performance in public of such activities are "generally prohibited by law as well as social custom" and failure to regard privacy "could constitute a substantial and highly offensive intrusion upon seclusion").

137.     The fundamental right to bodily privacy is also implicit in the concept of ordered liberty because a government that compels its citizens to disrobe or attend to intimate activities in the presence of the opposite sex violates the core of personal liberty, and it deprives its citizens of the full benefits afforded to its citizens when it conditions those benefits on surrendering the right to bodily privacy.

138.     Throughout its history, American law and society has had a national commitment to protecting citizens, and especially children, from suffering the risk of exposing their bodies, or their intimate activities, to the opposite sex.

139.     Our understanding of personal privacy from persons of the opposite sex is so universal as to require the use of separate facilities on the basis of sex in all kinds of contexts. *See* Public School Code of 1949, 24 P.S. § 7-740 (requiring that facilities "shall be suitably constructed for, and used separately by the sexes"). *See also* 43 P.S. § 109 (requiring application of industrial sanitation code to all employers, which involves separate restrooms); 7 Pa. Code § 1.57 (requiring separate facilities for meat packers); 7 Pa. Code § 78.75 (separate restrooms at eating establishments); 7 Pa. Code § 82.9 (requiring separate facilities on the basis of sex for seasonal farm labor, "distinctly marked 'for men' and 'for women' by signs printed in English and in

the native languages of the persons" using those facilities); 28 Pa. Code § 18.62 (requiring "separate dressing facilities, showers, lavatories, toilets and appurtenances for each sex" at swimming pools); 25 Pa. Code § 171.16 (requiring schools to follow the provisions of the Public Bathing Law (35 P. S. § § 672—680d) and 28 Pa. Code Chapter 18 (relating to swimming and bathing places); 28 Pa. Code §19.21 (requiring separate restrooms on the basis of sex at camps); 28 Pa. Code § 205.38 (requiring separate restrooms at long term care facilities); 31 Pa. Code § 41.121 (requiring separate facilities for each sex on railroads); 31 Pa. Code § 41.122 (requiring separate bathrooms to be provided for each sex and clearly designated and forbidding any person to use or frequent a toilet room assigned to the opposite sex); 31 Pa. Code § 47.127 (same); 34 Pa. Code § 403.28 (requiring restrooms for each sex); 43 Pa. Code § 41.24 (designating the entrance of "retiring rooms" to be clearly marked by sex and preventing opposite sex entry); 43 Pa. Code § 41.31 (requiring separate toilet rooms "for each sex" which shall be clearly designated and that "no person shall be permitted to use or frequent a toilet room assigned to the opposite sex"); 43 Pa. Code § 41.32 (requiring partitions separating toilet rooms on account of sex, which shall be "soundproof").

140.    The importance of personal privacy is also recognized in the context of discrimination law, and specifically in the situation that Plaintiffs face. *See, e.g.*, *Livingwell, Inc. v. Pennsylvania Human Relations Com.*, 606 A.2d 1287, 1290 (Pa. Commw. Ct. 1992) (citing *City of Philadelphia v. Pa. Human Relations Com.*, 300 A.2d 97 (Pa. Commw. Ct. 1973), and recognizing that employers may hire on the basis

of sex to vindicate "a juvenile's 'privacy interest'" that "would be violated if required to . . . disrobe and shower in front of a staff member of the opposite sex"). "[W]here there is a distinctly private activity involving exposure of intimate body parts, there exists an implied bona fide public accommodation qualification which may justify otherwise illegal sex discrimination. Otherwise . . . such sex segregated accommodations such as bathrooms, showers and locker rooms, would have to be open to the public." *Id.* at 1291.

141. "The standard for recognizing a privacy interest as it relates to one's body is not limited to protecting one where there is an exposure of an 'intimate area,' but such a right may also be recognized where one has a reasonable basis to be protected against embarrassment or suffer a loss of dignity because of the activity taking place." *Id.* "To hold otherwise would mean that separate changing rooms in factories, mines and construction sites where workers change from street clothes to work clothes and back and where 'intimate areas' are not exposed, would not be permitted." *Id.* at 1293 n.6.

142. Personal privacy is also recognized in the context of criminal law. *See, e.g., id.* at 1289 (quoting 18 Pa.C.S. § 5901 to make the point that "certain conduct . . . between genders is inappropriate. For example, it is a misdemeanor to commit open lewdness because those who observe it 'would be affronted or alarmed.'"). *See also* 18 Pa.C.S.A. § 7507.1 (regarding viewing or filming a person in a state of undress without their consent in a place where a person "would have a reasonable expectation of privacy"); 18 Pa.C.S.A. § 3127 (regarding the exposure of genitalia in circumstances

where a person should know that it "is likely to offend, affront or alarm").

143. Criminal protections are heightened for children. *See, e.g.,* § 3127(b) (increasing the severity of an indecent exposure charge based on age).

144. While pornography involving only adults is legal and cannot be constitutionally banned, it is illegal to possess, distribute, or even view images of naked children. *See* 18 Pa.C.S.A. § 6312.

145. Nearly every state has a law criminalizing "sexting," which is when a minor sends a naked picture of himself or herself via electronic means. *See, e.g.,* 18 Pa.C.S.A. § 6321.

146. Because of our national commitment to protect our citizens, and especially children, from the risk of being exposed to the anatomy of the opposite sex, as well as the risk of being seen by the opposite sex while attending to private, intimate needs, sex-separated restrooms and locker rooms are ubiquitous in public places.

147. Using public restrooms and locker rooms separated by sex are an American social and modesty norm.

148. Historically, purposefully entering a restroom or locker room designated for the opposite biological sex has been considered wrongful, and even criminal, behavior.

149. Freedom from the risk of compelled intimate exposure to the opposite sex, especially for minors, is deeply rooted in this Nation's history and tradition.

150. It is also implicit in the concept of ordered liberty.

151.    The ability to disrobe absent the presence of the opposite sex, along with the freedom to use the restroom absent the presence of the opposite sex is fundamental to most people's sense of self-respect and personal dignity.

152.    If the government were granted the far-reaching and extreme power to compel its citizens to disrobe or risk being unclothed in the presence of the opposite sex, then little personal liberty involving our bodies would be left.

153.    Because freedom from the risk of compelled exposure to the opposite biological sex, especially for minors, is deeply rooted in this nation's history and tradition and implicit in the concept of ordered liberty, it is a fundamental right. *See Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).

154.    Specifically: minors have a fundamental right to be free from State compelled risk of exposure of their bodies, or their intimate activities, such as occur within restrooms and locker rooms, to the opposite anatomical/biological sex.

155.    An abridgement of fundamental rights is presumptively unconstitutional and can only be justified if it survives strict scrutiny under which the law must serve a compelling state interest by the most narrowly tailored means.

156.    The Defendants' actions and practice violated Doe's and Jones' fundamental right to privacy because it allowed a biological female into the boys' locker room and bathrooms and subjected Doe and Jones to finding themselves in their underwear in front of someone of the opposite sex. And in Doe's case the person of the opposite sex was herself also in a state of undress.

157.    Shocked and distressed, Doe met with Defendant Dr. Foley.

27

158. When Doe asked to be protected from the situation, Dr. Foley told him that there was nothing he could do and that instead, he and his friends would have to share the boys' locker room with a person of the opposite sex. They were told to tolerate it and make it as natural as possible.

159. Even though after Jane Doe and John Doe got involved, Doe was told that he could use the nurse's office to change for gym class, he was still required to enter the locker room in order to safely store his belongings. This would still subject Doe to viewing a person of the opposite sex in state of undress.

160. Moreover, the policy harms Doe because unless he surrenders his right to bodily privacy, he can no longer use the locker room or restrooms designed for use by boys.

161. While the Public School Code of 1949 requires that facilities "shall be suitably constructed for, and used separately by, the sexes," 24 P.S. § 7-740, Defendants' policy violates the requirement of separate facilities and denies Doe the right to use such a facility, instead conditioning the use of the "boys'" locker room on surrendering Doe's right to bodily privacy from persons of the opposite sex. *See also* 25 Pa. Code § 171.7 (requiring separate facilities "for each sex" in schools). *Accord* 22 Pa. Code § 55.2 (same for private elementary schools); 22 Pa. Code § 57.2(a) (same for private secondary schools); 22 Pa. Code § 59.34(a) (same for private special education schools).

162. Doe and his guardians on multiple occasions brought up the policy with the Assistant Principal, the Principal, and the Superintendent, but their requests for

a change in the District's policy were denied.

163.    Doe and his guardians were told that the school was no longer going to discuss this issue with them or any parents.

164.    Doe ultimately decided to not change for gym class, which resulted in failing each gym class.

165.    As for Jack Jones, even though his mother, Jane Jones got involved, they were not told that there were any other options than changing in the same locker room than a biological female.

166.    Based on Defendants' policy, Doe, Jones, Smith, and Roe all risk the same violations in the future.

167.    The policy harms Doe, and Jones, because unless they surrender their right to bodily privacy, they can no longer use the locker room or restrooms designed for use by boys.

168.    The policy harms Smith and Roe, because unless they surrender their right to bodily privacy, they can no longer use the locker room or restrooms designed for use by girls.

169.    All Plaintiffs risk the violation of their personal privacy by persons of the opposite sex in the restroom. While bathroom toilets do have stalls, their doors like most bathroom stall doors have gaps at joints and gaps from the floor that undermine personal privacy when in a state of undress and in the presence of persons of the opposite biological sex. But even if stalls were completely enclosed from floor to ceiling with no gaps, the privacy rights of students begin at the door of the

29

restrooms or locker rooms, not at the door of a stall.

170. The Defendants have no compelling interest to justify this violation of Plaintiffs' right to bodily privacy from persons of the opposite sex.

171. The violation of this right is particularly acute where, as here, Plaintiffs' rights were first violated without any notice or consent in a place traditionally--and by state statute--reserved for persons of one biological sex.

172. The violation was ongoing because it compromises the most intimate aspects of human affairs and involves a setting traditionally (and by state law) reserved for persons of one biological sex. It effectively denies the appropriate use of this setting in a manner conveying sexual harassment and official bullying, and which is otherwise inconsistent with deeply rooted notions of fundamental personal interests in personal privacy from persons of the opposite biological sex.

173. Defendants failed to employ the least restrictive means of serving any interest that they may later articulate.

174. Accordingly, the actions and practice fail strict scrutiny review and are unconstitutional.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## SECOND CAUSE OF ACTION (ALL DEFENDANTS):
## VIOLATION OF TITLE IX

175. Plaintiffs reallege all matters set forth above and incorporate them herein.

176.    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

177.    The School District is a federal funding recipient for purposes of Title IX.

178.    Courts have given Title IX broad effect in order to combat sex discrimination in the educational setting.

179.    There is an implied right of action for a student to sue his school and school officials under Title IX.

180.    Defendants' authorizing people to use restrooms or locker rooms that are designated for the opposite biological sex violates privacy and creates a sexually harassing hostile environment.

181.    Unconsented exposure to persons of the opposite sex in bathrooms and locker rooms, which exist to permit people to enter various states of undress without members of the opposite sex present, creates a sexually harassing hostile environment.

182.    The policy of the school is to allow those who self-identify with the opposite biological sex to choose to use locker rooms and restrooms that are designated for the opposite biological sex.

183.    Plaintiffs do not object to students of the same sex using private facilities with them, and welcome them no matter how they self-identify, and they have no

31

expectation of privacy from such students.

184.   This policy needlessly subjects Plaintiffs to the risk that their partially unclothed body will be exposed to the opposite sex and that they will be exposed to a partially clothed person of the opposite-sex. Doe and Jones were both in a state of undress in the presence of someone of the opposite sex, and in Doe's case, the female was also in a state of undress.

185.   As a result, Doe and Jones both experienced embarrassment, humiliation, frustration, degradation, and loss of dignity.

186.   As a result, Smith experienced embarrassment and anxiety as a result of finding a male in her bathroom.

187.   Doe has been marginalized by other students on account of his objection to the policy.

188.   Plaintiffs are avoiding the restroom as a result of the fear and apprehension of embarrassment, humiliation, degradation, and loss of dignity they may experience in the restroom.

189.   Doe has altogether ceased using the locker room because of the legitimate fear that he will again be in a state of undress or exposed to an opposite sex student in a state of undress.

190.   Doe cannot store his clothes in the locker room since that would again put him in the locker room where he may be exposed to an opposite sex student in a state of undress.

191.   Doe is now taking a failing grade every day he does not change.

192. The policy violates Title IX because it intentionally produces unwelcome sexual harassment and creates a hostile environment on the basis of sex and denies access to educational programs and benefits.

193. In order to make out a Title IX claim: (1) plaintiff must be subjected to sexual harassment; (2) the harassment must be severe, pervasive, and objectively offensive; (3) the school must be deliberately indifferent to the harassment; and (4) the harassment must result in the denial of access.

194. Plaintiffs satisfy all elements.

195. First, Plaintiffs are subjected to harassment because the practice allows biological females to use the boys' locker rooms and restrooms, which creates a harassing hostile environment specifically on the basis of the sex of the persons involved.

196. Differences in reproductive anatomy are the only reason for separate facilities. Were there no differences in anatomy, there would be no privacy interests justifying separate facilities in the first place.

197. These differences do not disappear when biological females self-identify as males, and vice versa.

198. Neither state nor federal law obligate Defendants to provide multi-user private facilities based on what a student wears, whom the student is sexually attracted to, how the student presents or identifies him or herself, or based on whether a student identifies with their sex or with the opposite sex.

199. The anatomical differences between the sexes is the reason that Title IX

and its implementing regulations allow for separate living facilities, restrooms, locker rooms, and changing areas for each biological sex.

200.    Title IX and its implementing regulations provide for separate living facilities, restrooms, locker rooms, and changing areas for each biological sex based on the recognition that permitting a person of one biological sex to enter and use the facilities designated for the opposite sex would be sexually harassing.

201.    The policy, which opens the boys' restrooms and locker rooms to biological females, is harassment based on the boys' sex.

202.    The policy, which opens the girls' restrooms and locker rooms to biological males, is harassment based on the girls' sex.

203.    Doe, Jones, and Smith experienced humiliation, degradation, and loss of dignity and fear the same in the future as a result of the policy and practice.

204.    Roe experiences persistent feelings of anxiety, stress, humiliation, embarrassment, apprehension, and distress which stay with her and impact her throughout the day.

205.    The school's removal of privacy based on significant and real anatomical differences between the biological sexes creates the hostile environment, which is harassment.

206.    Second, the harassment is severe, pervasive, and objectively offensive.

207.    Letting biological females use the boys' restrooms and locker rooms places the bodily privacy of both sexes at risk, and so is sufficiently egregious to satisfy the severity prong.

208. The harassment is ongoing and continuous, preventing Doe from using the locker room and discouraging him from using the restrooms without giving up his right to privacy, thus satisfying the pervasiveness prong.

209. The environment is one that a reasonable person would find hostile and objectively offensive, and one that Doe, Jones, Smith, and Roe in fact perceive to be so.

210. The objective unreasonableness is evident in the fact that we have long recognized the right to a private setting, free from persons of the opposite sex in restrooms and locker rooms, where we often enter into a state of undress or performance of private functions.

211. This principle is recognized in numerous areas of the law, as stated above.

212. Third, school officials are not only on notice of the hostile environment, but it is the Defendants' policy that establishes and sustains the hostile environment.

213. Moreover, Doe and his Guardians repeatedly notified the individual Defendants, who then told Doe and his Guardians that this is what the school will be doing as a matter of policy.

214. The Defendants have authority to rescind their policy which would resolve the hostile environment created by that policy.

215. Despite their knowledge that their practice is creating a hostile environment based on sex, the Defendants have not remedied the situation.

216. Instead, these officials initially advised that Doe should tolerate the

violation of his privacy and told him twice, to act as natural as possible.

217.    Subsequently, these officials advised that if Doe perceives the environment to be hostile, he should remove himself from it by using the nurse's office.

218.    Schools cannot escape liability for Title IX violations by requiring the victim of harassment to remove themselves from the hostile environment or otherwise suggesting that they are responsible for the harassment they endure.

219.    Fourth, Plaintiffs have been effectively denied the use of facilities that are to be provided, pursuant to state and federal law, on account of their biological sex.

220.    This has also resulted in Doe's inability to change and store his belongings in the locker room, thus resulting in failing grades during each day of gym class.

221.    Defendants' policy and actions violate Title IX by creating a hostile environment on the basis of sex.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## THIRD CAUSE OF ACTION (DOE AND JONES V. ALL DEFENDANTS): INVASION OF PRIVACY - INTRUSION UPON SECLUSION

222.    Plaintiffs reallege all matters set forth above and incorporate them herein.

223.    Defendants purposely opened up the boys' locker room and restroom to

biological females who identify with the opposite sex; and opened up the girls' locker room and restroom to biological males who identify with the opposite sex.

224.    As a result, Doe found himself in only his underwear in the presence of a biological female, who was wearing nothing above her waist other than a bra.

225.    As a result, Jones, found himself in only his underwear in the presence of a biological female.

226.    As a result, Smith found herself in a bathroom, alone with a biological male.

227.    One's partially clothed body is a private affair, particularly with regards to a member of the opposite sex.

228.    However, even where one does not remove clothing in these bathrooms or locker rooms, it is sufficient under the law that the seclusion of the bathroom or locker room, a private area, was intruded upon.

229.    Defendants' policy, therefore, caused Doe's private affairs to be intruded upon by being viewed by someone of the opposite sex in his underwear and intruded upon his privacy by forcing him to be at a place to see a partially clothed female body.

230.    Defendants' policy caused Jones' private affairs to be intruded upon by being viewed by someone of the opposite sex in his underwear.

231.    Laws and social custom have long protected our right to privacy from members of the opposite sex in these areas to ensure freedom  from undressing in the view of someone of the opposite sex and to freedom from viewing someone of the opposite sex undressing.

232. In particular, laws applicable to public schools require separate facilities on the basis of sex, which has always been understood to mean on the basis of biological/anatomical sex.

233. Defendants' practice failed to give due regard to Doe's and Jones' privacy.

234. Therefore, the circumstances in which Doe and Jones found themselves, particularly in a setting designed to be private with regards to persons of the opposite sex, would be highly offensive to the ordinary reasonable person.

235. Plaintiffs lack ongoing access to the locker rooms and bathrooms of their sex and are discouraged in their use of the restroom of their sex as a result of this invasion of seclusion.

236. Additionally, Doe, currently in P.E. class, has been receiving failing grades in gym class due to this invasion of seclusion.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants, jointly and/or severally, as follows:

A. A declaration that the Defendants' policy and actions violate Plaintiffs' constitutional right to privacy.

B. A declaration that Defendants' policy and actions were a violation of the Pennsylvania School Code of 1949.

C.     A declaration that Defendants committed an unlawful intrusion upon Doe's and Jones' seclusion and bodily privacy rights.

D.     A declaration that the Defendants' policy and actions impermissibly burdens Plaintiffs' rights under Title IX to be free from discrimination on the basis of sex by creating a sexually harassing hostile environment.

E.     An injunction enjoining the District's policy and ordering the District to permit only females to enter and use the multi-user girls' private facilities, including locker rooms and restrooms, and only males to enter and use the multi-user boys' private facilities, including locker rooms and restrooms.

F.     An award of compensatory damages for the violation of Plaintiffs' constitutional and statutory rights;

G.     An order that this Court retain jurisdiction of this matter for the purpose of enforcing any Orders;

H.     An award of Plaintiffs' costs and expenses of this action, including a reasonable attorneys' fees award, in accordance with 28 U.S.C. § 2412, 42 U.S.C § 1988;

I.     All other relief to which Plaintiffs may show themselves to be entitled.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all counts and issues so triable.

Respectfully submitted this 18th day of April, 2017.

By: _____

CATHY R. GORDON, PA 56728*                    RANDALL L. WENGER, PA 86537

JACOB KRATT, PA 316920
**LITCHFIELD CAVO LLP**
420 Fort Duquesne Blvd., Suite 600
Pittsburgh, PA 15222
412-291-8246
412-586-4512 Fax
gordonc@litchfieldcavo.com
kratt@litchfieldcavo.com

JORDAN LORENCE, MN 0125210**
KELLIE FIEDOREK, DC 1015807**
CHRISTIANA HOLCOMB, CA 277427**
**ALLIANCE DEFENDING FREEDOM**
440 First St. NW, Suite 600
Washington, DC 20001
(202) 393-8690
jlorence@ADFlegal.org
kfiedorek@ADFlegal.org
cholcomb@ADFlegal.org

JEREMY L. SAMEK, PA 205060
**INDEPENDENCE LAW CENTER**
23 North Front St.
Harrisburg, PA 17101
(717) 657-4990
(717) 545-8107 Fax
rwenger@indlawcenter.org
jsamek@indlawcenter.org

GARY S. MCCALEB, AZ 018848***
**ALLIANCE DEFENDING FREEDOM**
15100 N. 90th St.
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax
gmccaleb@ADFlegal.org

*Application for Admission Forthcoming
***Pro Hac Vice* Applications Forthcoming
***Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*

## DECLARATION UNDER PENALTY OF PERJURY

We, "Joel Doe", "Jane Doe", and "John Doe", citizens of the United States and a resident of the Commonwealth of Pennsylvania, have read the foregoing Amended Verified Complaint and declare under the penalty of perjury, pursuant to 28 U.S.C. 1746, that the foregoing is true and correct to the best of our knowledge.

Executed this ___*13*___ day of April 2017.

_____ (redacted), individually under the pseudonym Joel Doe

_____ (redacted), individually under the pseudonym Jane Doe and on behalf of Joel Doe

_____ (redacted), individually under the pseudonym John Doe and on behalf of Joel Doe

## DECLARATION UNDER PENALTY OF PERJURY

We, "Jack Jones", "Jane Jones", and "John Jones", citizens of the United States and a resident of the Commonwealth of Pennsylvania, have read the foregoing Amended Verified Complaint and declare under the penalty of perjury, pursuant to 28 U.S.C. 1746, that the foregoing is true and correct to the best of our knowledge.

Executed this __13__ day of April 2017.

_____

(redacted), individually under the pseudonym Jack Jones

_____

(redacted), individually under the pseudonym Jane Jones and on behalf of Jack Jones

_____

(redacted), individually under the pseudonym John Jones and on behalf of Jack Jones

## DECLARATION UNDER PENALTY OF PERJURY

I, "Mary Smith", a citizen of the United States and a resident of the

Commonwealth of Pennsylvania, have read the foregoing Amended Verified Complaint

and declare under the penalty of perjury, pursuant to 28 U.S.C. 1746, that the foregoing

is true and correct to the best of my knowledge.

Executed this _14_ day of April 2017.

_____(redacted), individually under the pseudonym Mary Smith

## DECLARATION UNDER PENALTY OF PERJURY

I, "Macy Roe", a citizen of the United States and a resident of the Commonwealth of Pennsylvania, have read the foregoing Amended Verified Complaint and declare under the penalty of perjury, pursuant to 28 U.S.C. 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 13 day of April 2017.

(redacted), individually under the pseudonym Macy Roe

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on Tuesday, April 18, 2017, the foregoing was filed electronically and served on the other parties via the court's ECF system.

The undersigned hereby certifies that counsel for Plaintiffs has also delivered an electronic copy of the foregoing to counsel for Defendants and is sending the same by regular mail to:

David W. Brown, Esq. LEVIN
LEGAL GROUP, P.C.
1301 Masons Mill Business Park
1800 Byberry Road
Huntingdon Valley, PA 19006
dbrown@levinlegalgroup.com

Randall L. Wenger
INDEPENDENCE LAW CENTER
23 North Front St.
Harrisburg, PA 17101
rwenger@indlawcenter.org