# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOEL DOE, a minor; by and through his Guardians JOHN DOE and JANE DOE; MARY SMITH; JACK JONES, a minor; by and through his Parents JOHN JONES and JANE JONES; and MACY ROE,<br><br>    Plaintiffs,<br><br>    vs.<br><br>BOYERTOWN AREA SCHOOL DISTRICT; DR. RICHARD FAIDLEY, in his official capacity as Superintendent of the Boyertown Area School District; DR. BRETT COOPER, in his official capacity as Principal; and DR. E. WAYNE FOLEY, in his official capacity as Assistant Principal,<br><br>    Defendants,<br><br>    And<br><br>PENNSYLVANIA YOUTH CONGRESS FOUNDATION,<br><br>    Defendant Intervenor. | Case No. 17-1249-EGS<br><br>The Honorable Edward G. Smith<br><br>**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

**REPLY BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

INTRODUCTION

Plaintiffs, three current students and one recent graduate of Boyertown Area High School, reply to the briefs opposing their Preliminary Injunction Motion. Most of the issues raised by Defendants and Intervenor arise out of obscuring the meaning of the word "sex." The word refers to the classification as male or female based on reproductive function.[1] By contrast, "gender identity" is defined as "a personal, deeply-felt sense of being male, female, both or neither."[2]

Despite Intervenor's accusation that the issue involves offense at persons because they are "transgender," Plaintiffs merely object to sharing privacy facilities with *anyone* of the opposite sex. Intervenor takes the mischaracterization further, alleging that Plaintiffs seek an injunction to prevent students who identify with something other than their sex from using any multi-person privacy facility. To the contrary, Plaintiffs have no objection to sharing privacy facilities with students identifying as transgender so long as those students are the same biological sex. That is because sex is determinative as to whether there is a privacy concern, sexual harassment, or an invasion of seclusion. Sex, not gender, is what matters in privacy facilities.

ARGUMENT

**1. Privacy Concerns Arise Precisely Because of the Presence of the Opposite Sex**.

The ability to use privacy facilities in the absence of persons of the opposite sex is a fundamental right, because personal privacy is fundamental particularly with regards to "the presence of members of the opposite sex." *Doe v. Luzerne County*, 660 F.3d 169, 177 (3d Cir.

---

[1] *See, e.g., Random House College Dict*. 1206 (rev. ed. 1980) ("either the male or female division of a species, esp. as differentiated with reference to the reproductive functions"); *American Heritage Dict*. 1187 (1976) ("The property or quality by which organisms are classified according to their reproductive functions").

[2] *See, e.g.,* Asaf Orr, Esq., *et al*., National Center for Lesbian Rights, *Schools in Transition: A Guide for Supporting Transgender Students in K-12 Schools* 7 (2015), *available at* http://bit.ly/2kc8Ooi.

2011). And this is no less true in the absence of complete nudity. *See id.* at 176 (finding a "constitutionally protected privacy interest in" a person's "partially clothed body"). Fundamental rights are at stake not just in situations where rights are directly deprived but also when a person is forced to waive a right in order to access a governmental benefit like multi-user facilities designed for a person's own sex. "[T]he government may not deny a benefit to a person because he exercises a constitutional right." *Regan v. Taxation with Representation of Washington*, 461 U.S. 540, 545 (1983). Moreover, this privacy violation is not alleviated through the features that are in place to provide a small level of privacy as between members of the same sex.

Defendants and Intervenor argue that the existence of stalls or urinal dividers satisfies Plaintiffs' privacy rights and suggest that if Plaintiffs object to changing with people of the opposite sex, they should change in four bathroom stalls in the high school locker room. They conveniently ignore the fact that both Joel Doe and Jack Jones were already caught in the objectively offensive and embarrassing circumstance of standing in their underwear when a classmate of the opposite sex was with them. But even without these two egregious examples, stalls and urinal dividers are features that only provide the level of privacy we expect from members *of the same-sex*.[3]

That also does not solve the problem of seeing people of the opposite sex, who are permitted to change and even enter states of nudity in locker rooms. A student who desires privacy from the opposite sex would still have to walk past persons of the opposite sex in various states of undress. Under Defendants' position, there is no privacy-based reason why a male gym teacher

---

[3] Any features that would sufficiently protect the fundamental and statutory right of bodily privacy in privacy facilities must be sufficient to provide privacy from *all* members of the opposite sex if any member of the opposite sex is permitted to be present. One can envision facilities that provide floor to ceiling "single-user" rooms for changing, voiding bowels, and showering, while opening up the common areas to members of both sexes and limiting the activities that are acceptable to perform in those common areas to only those which would be acceptable to perform in the presence of people of either sex. That, however is not the case here.

2

or any male could not use the common areas of a girls' locker room to change when girls are changing so long as he did not commit any additional bad acts like groping or taking photos--those things that are inappropriate even for members of the same sex to do to each other. Girls who found his presence offensive would simply have to retire to the nearest stall or curtain.

2. **It Misses the Point of Title IX to Suggest that Sex is Secondary to Gender Identity**.

   a. **It is Clear that Title IX has Everything to do With Sex**.

Title IX uses the word "sex," which at the time of enactment had only one meaning, the two distinct biological categories. Defendants suggest that there is no clear definition of sex in Title IX or its implementing regulations, which is nonsense: a federal district court in Texas easily construed the use of "sex" in Title IX to mean "the biological and anatomical differences between male and female students as determined at their birth." *State of Texas v. United States of America*, No 7:16-cv-00054 (N.D. Tex. May 5, 2016), Preliminary Inj. Order, ECF 58 at 31.[4]

This is consistent with the Plaintiffs' analysis in their principal brief at page 29: the legislative history made clear that the intention of Title IX was to reduce the educational disparity between the two sexes. "Gender" was not used in Title IX and as Defendants define the term, the concept is incompatible with the established binary of male and female as grounded in

---

[4] While Defendants cite *Bd. of Educ. of the Highland Local School Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850 (S.D. Ohio 2016), for the opposite proposition, that opinion should be given little weight since the federal government is providing the relief sought by the privacy-defending school district as the Department of Education terminated its enforcement efforts. *See* Exh. 1. Likewise, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), a Title VII case, merely allowed a sex stereotype case to proceed. Use of privacy facilities was not at issue. It did not provide an independent cause of action on the basis of gender identity or remotely suggest that personal privacy may be violated. Indeed, "use of a restroom designated for the opposite sex does not constitute a mere failure to conform to sex stereotypes." *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1224 (10th Cir. 2007). Privacy facilities that are based on sex do not take into account any stereotypes whatsoever.

reproductive nature. Importing a wholly conflicting meaning into Title IX to redefine "sex" would erase the privacy protected by the consistent meaning of "sex" in place for four decades.

### b. Gender Protections are Incompatible with Title IX's Sex Protections.

Sex protections are effectively eliminated if we replace "sex" with "gender." By way of illustration, personal facilities can no longer be separated by "sex" if we make the separation on the basis of "gender." If separated on the basis of sex, a biological girl who identifies as a boy will use the girls facilities because all girls use girls' facilities. If separated on the basis of gender, a biological girl who identifies as a boy will use the boys' facilities. The problem is that Title IX cannot force the latter result without either ignoring the meaning of the word "sex" or ignoring 34 C.F.R. § 106.33, which provides for separate privacy facilities on the basis of sex.

### c. Separating Privacy Facilities on the Basis of Sex has been and will Continue to be Workable, While Separation on the Basis of Gender is Not.

Intervenor argues that it is more protective of students' sense of privacy and modesty for girls who identify as boys to use the boys' facilities. Intervenor Br. at 8. That turns privacy on its head. Privacy facilities have always been provided on the basis of our biological differences, not subjective perceptions of where one falls on a continuum of "genders." When the use of privacy facilities is disconnected to basic biological differences between the two sexes, the result will not be greater privacy, but no privacy at all.

Gender cannot provide a basis for separate privacy facilities because it is not a binary construct grounded in human reproductive nature, it is a continuum of self-perceptions that deconstructs sex. Because gender includes non-sex "something else," both sexes, fluidity, and other constructs foreign to a "boys'" room and a "girls'" room, it would be irrational to keep separate facilities altogether.

4

### 3. Defendants Concede that the Trump Administration has Given States Greater Control.

The recent Trump administration letter to schools stated that "the Departments believe that, in this context, there must be due regard for the primary role of the *States and local school districts* in establishing educational policy." (emphasis added). Defendants make much of the reference to local schools while ignoring the role of the states. Our Commonwealth has already spoken, and privacy facilities are to be separated on the basis of sex,[5] which is consistent with other state law set forth at length in Plaintiffs' principal brief on page 14, note 7. Therefore, the Boyertown Area School District cannot forge its own policy contravening state policy.

### 4. Defendants Appeal to the Existence of Rules Relating to Inappropriate Conduct as Between Members of the Same Sex is Irrelevant. The Actions Permitted by the Policy is not an "Ordinary Use of Shared Facilities" and is Objectively Offensive.

Concerns for sexual harassment and privacy are not ameliorated by rules regarding threatening, harassing or inappropriate behavior in privacy facilities. The objectively offensive nature of the sexual harassment and privacy violation does not disappear simply because the person entering the privacy facilities of the opposite sex does not perform additional bad acts which are those deemed inappropriate, harassing or threatening *even if performed members of the same sex.* Defendants' act of permitting students to use privacy facilities of the opposite sex is not an ordinary use of shared privacy facilities, constitutes harassment, and is a violation of the privacy rights of members of the opposite sex. The use of shared restrooms and locker rooms is not "objectively offensive" because those students identify as "transgender" as Defendants misrepresent Plaintiffs' position. It is objectively offensive because they are the opposite sex.

---

[5] *See* Public School Code of 1949, 24 P.S. § 7-740 (requiring that privacy facilities "shall be suitably constructed for, and used separately by the sexes").

5. **This is Sex Based Harassment Because Opposite Sex Students Want to Share Privacy Facilities Since the Facilities are Ordinarily Used by Members of One Sex.**

The harassment that Plaintiffs have faced and continue to face has everything to do with sex. Were it not for the male sex of those who use the boys' facilities and the female sex of those who use the girls' facilities, those of the opposite sex would not be demanding to use those communal facilities as a method of affirming their gender identity. Defendants' argument that their decision treats both sexes equally simply means that both sexes are harassed equally.

6. **Despite Defendants' Mischaracterization of Cases, Children Do Not Lose Their Right to Privacy Simply Because They are Students**.

Defendants cite drug testing cases that uniformly support Plaintiffs' claims. The reduced privacy in schools, necessitated by things like drug searches and student athletes changing clothes to compete, are with respect to interactions with persons *of the same sex*. *See Vernonia Sch. Dist. 47 J v. Acton, 515 U.S. 646, 656 (1995)* ("The student then enters an empty locker room accompanied by an adult monitor of the same sex"); *Schaill by Kross v. Tippecanoe County School Corp.*, 864 F.2d 1309, 1311 (7th Cir. 1988) ("student selected for testing is accompanied by a school official of the same sex to a bathroom"). These cases highlight the obvious, that the communal nature of privacy facilities necessarily result in reduced privacy to members of the same sex.

Plaintiffs affirm that their privacy expectation is not from the same sex, but the opposite sex. These cases support Plaintiffs, for it is the reduced privacy among students in privacy facilities that militates against authorizing members of the opposite sex to use those facilities.

Defendants' reliance on *Cruzan v. Special School District Number 1*, 294 F.3d 981 (8th Cir. 2002), is also misplaced. In that case, the school, as a result of a state law which neither required nor prohibited sex-specific restrooms, accommodated a man who identified as a woman by permitting his use of one female bathroom, the "women's faculty restroom." *Id* at 983. Both the

6

District Court and Circuit Court noted that a female teacher could use the other female privacy facilities in the school (including a communal female-only restroom near one of her classrooms). *Id*. at 984. Defendants' policy violates Pennsylvania law requiring separate bathrooms on the basis of sex. In addition, Defendants here did not fashion a limited accommodation, but opened every multi-user restroom and every locker room.

### 7. Defendants are Not Immune from Injunctive Relief.

Defendants raise four issues in response to the Plaintiffs' claim for intrusion upon seclusion. First, they raise governmental immunity under 42 Pa.C.S. § 8541. Plaintiffs are seeking a preliminary injunction, and immunity (when it applies) only applies to liability for damages, not injunctive relief. Therefore, immunity does not affect the analysis.

Second, Defendants argue that they did not personally intrude upon the Plaintiffs' seclusion. However, Defendants' argument misses the point. The intrusion was not an indirect result of Defendants' actions, but rather the the direct result. Defendants acted knowing that the intrusion would result and the intrusion would not have happened but-for their action.

Third, they contend that the *expectation* of privacy is not legitimate because students have to change for school sporting events and similar activities. However, the fact that there are sex-specific locker rooms cuts against Defendants' broad assertion. The history of jurisprudence in the area of locker room privacy and dating back to debates surrounding the passage of Title IX indicate that sex-specific locker rooms were not only permissible, but expected to continue.

The fourth and final issue raised by Defendants is that the intrusion would not be offensive to "the ordinary reasonable person." Defendants are again attempting to decide for students what is and is not offensive, but this is an objective standard, not a subjective one based on Defendants' beliefs. While Defendants baldly assert that "the vast majority of BASH students" have neither caused an incident or complained, the point, even if true, is not dispositive.

7

Defendants cannot thrust an intrusion upon a group, and escape liability merely by saying "only a relative few people complained." A few administrators or even one relatively small group over the course of one school year (or a portion of one) does not define what an "ordinary reasonable person" is. Instead, Plaintiffs have a legitimate expectation that the locker rooms and bathrooms are only to be used by individuals of the same sex and that they will not be exposed to someone of the opposite sex in a state of undress or attending to personal needs, or be exposed to individuals of the opposite sex while themselves in a state of undress or attending to personal needs, and an intrusion by individuals of the opposite sex is objectively offensive.

8. **Students Identifying with the Opposite Sex are not Singled Out for Adverse Treatment**.

Everybody should be free to use privacy facilities based on sex. This may not be what some students desire, but maintaining two separate privacy facilities for the two sexes does not single anyone out and does not violate Equal Protection. Privacy between the two sexes is the only defensible reason for maintaining distinct privacy facilities in the first place.

Gender identities, as both Defendants and Intervenor admit, exist outside of a binary system. Boyertown's policy segregates groups of human beings in privacy facilities, in their words, based on "a person's internal sense of being a man or a woman, or someone outside of the gender binary."[6] Boyertown's segregation of students based on any given person's internal sense of being a man or woman or something outside of that binary is a textbook violation of Equal Protection. Whether one adheres to male gender roles, wears stereotypical men's clothing, or adopts stereotypical men's grooming habits is irrelevant to bathroom and locker room use.

Furthermore, Boyertown's gender-segregation solution cannot account for the myriad non-binary genders, which means such students either have no place to go because nothing conforms

---

[6] *See* Def Brief at dk 34, p 1.

8

to their stated gender identity or they can use whichever space they feel most comfortable with at any given time, thus giving them all male and female multi-user facilities. Gender segregated facilities are unworkable. Only privacy concerns between the two sexes give permissible reason for separate privacy facilities.

9. **The District has no Interest Justifying the Violation of Personal Privacy.**

The District can be commended for seeking to provide help for students who feel uncomfortable using facilities with people of the same sex, but could have done so in ways that do not come at the expense of the rights of other students, especially the other students' fundamental right to privacy from the opposite sex. A woman's right to bodily privacy does not spring into existence, or cease to exist, depending on what a man believes about the nature of his own internal sense of "gender identity." Her right to bodily privacy is hers and hers alone--and the same holds true for a man's right to privacy: it does not depend on a woman's state of mind.

The government's interest in privacy facilities has always been privacy between the two immutable sexes; it has nothing to do with affirming a set of mutable characteristics that reflect stereotypes of masculinity or femininity. The existence of separate privacy facilities has nothing to do with affirming a person's perception of their own gender. So as this Court balances interests, it should not lose sight of why we maintain separate facilities in the first place.

We can help students identifying with the opposite sex without harming other students and compromising the privacy between the two sexes, which is the reason for separate facilities. Besides, if the District's concern is about students being singled out for ridicule, perhaps it should recognize the position it is putting those students in who desire personal privacy. Ultimately, we do not balance these interests in a vacuum. Preexisting policy through state law shows us the balance--and in that balance privacy between the two sexes is non-negotiable.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the preliminary injunction issue.

Respectfully submitted this 16th day of June, 2017.

By: /s/ Randall L. Wenger

| | |
|---|---|
| CATHY R. GORDON, PA 56728<br>JACOB KRATT, PA 316920<br>**LITCHFIELD CAVO LLP**<br>420 Fort Duquesne Blvd., Suite 600<br>Pittsburgh, PA 15222<br>412-291-8246<br>412-586-4512 Fax<br>gordonc@litchfieldcavo.com<br>kratt@litchfieldcavo.com | RANDALL L. WENGER, PA 86537<br>JEREMY L. SAMEK, PA 205060<br>**INDEPENDENCE LAW CENTER**<br>23 North Front St.<br>Harrisburg, PA 17101<br>(717) 657-4990<br>(717) 545-8107 Fax<br>rwenger@indlawcenter.org<br>jsamek@indlawcenter.org |
| KELLIE FIEDOREK, DC 1015807 FL 74350*<br>CHRISTIANA HOLCOMB, CA 277427*<br>**ALLIANCE DEFENDING FREEDOM**<br>440 First St. NW, Suite 600<br>Washington, DC 20001<br>(202) 393-8690<br>kfiedorek@ADFlegal.org<br>cholcomb@ADFlegal.org<br>*Admitted *Pro Hac Vice* | GARY S. MCCALEB, AZ 018848*<br>**ALLIANCE DEFENDING FREEDOM**<br>15100 N. 90th St.<br>Scottsdale, AZ 85260<br>(480) 444-0020<br>(480) 444-0028 Fax<br>gmccaleb@ADFlegal.org<br><br>*Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on Friday, June 16, 2017, the foregoing was filed electronically and served on the other parties via the court's ECF system.

/s/ Randall L. Wenger
Randall L. Wenger
**INDEPENDENCE LAW CENTER**
23 North Front St.
Harrisburg, PA 17101
rwenger@indlawcenter.org
