# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOEL DOE, a minor, by and through his Guardians JOHN DOE and JANE DOE; MARY SMITH; JACK JONES, a minor, by and through his parents JOHN JONES and JANE JONES; and MACY ROE : : : : : Plaintiffs, : v. : : BOYERTOWN AREA SCHOOL DISTRICT; : DR. RICHARD FAIDLEY; DR. BRETT COOPER : and DR. E. WAYNE FOLEY, : : Defendants. : | No. 17-cv-1249-EGS |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS BY ALL DEFENDANTS

Michael I. Levin, Esq. (PA 21232)
David W. Brown, Esq. (PA 201553)
LEVIN LEGAL GROUP, P.C.
1800 Byberry Road, Suite 1301
Huntingdon Valley, PA 19006
Phone: (215) 938-6378
mlevin@levinlegalgroup.com
dbrown@levinlegalgroup.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

I. PROCEDURAL HISTORY ........................................................................................... 4

II. STATEMENT OF QUESTIONS INVOLVED ............................................................ 4

III. FACTS .......................................................................................................................... 5

IV. ARGUMENT ................................................................................................................ 5

    A. Plaintiffs' Constitutional Claim Is Foreclosed By Their Title IX Claim ........................ 5

    B. Plaintiffs' Intrusion Upon Seclusion Claim Is Barred By Pennsylvania's Political Subdivision Tort Claims Act ................................................................................................ 6

    C. Dr. Faidley Is A High Public Official And Has Immunity On All Claims ..................... 9

    D. Title IX Claims Can Not Be Brought Against Individuals .............................................. 11

    E. The Individual Defendants Are Protected By Qualified Immunity ................................. 12

V. CONCLUSION ............................................................................................................. 15

I.   INTRODUCTION

Plaintiffs allege that Defendants Boyertown Area School District (the "School District"), Superintendent Dr. Richard Faidley, Boyertown Area Senior High School ("BASH") Principal Dr. Brett Cooper, and BASH Assistant Principal E. Wayne Foley violated their rights under the Fourteenth Amendment, Title IX of the Education Amendments of 1972 ("Title IX"), and Pennsylvania tort law. However, it is clear that even at this motion to dismiss phase, the Plaintiffs are unable to maintain most of these claims.

Initially, Plaintiffs are unable to maintain their claims for both a constitutional deprivation pursuant to Section 1983 and their Title IX claim. The *Sea Clammers* doctrine provides that a constitutional claim is subsumed when a plaintiff also states a claim under a federal statute with a comprehensive enforcement scheme, such as Title IX, that is based on the same alleged misconduct. So without even getting to the merits, the Section 1983 claim fails.

The Plaintiffs remaining claims are subject to various types of immunity based on the Defendants' roles as government actors. The intrusion upon seclusion tort claim is precluded against all Defendants by Pennsylvania's Political Subdivision Tort Claims Act. Similarly, all claims against Superintendent Dr. Richard Faidley are precluded by the Pennsylvania common law doctrine of high public official immunity.

The Plaintiffs' only surviving claim is the Title IX claim; however, that claim should be dismissed as to the individual Defendants both because Title IX claims cannot be maintained against individuals and because claims against individuals in their official capacities is no different from a claim against the employing entity. And finally, even if the Title IX claim could be maintained against the individual Defendants, they would not be liable for damages due to the doctrine of qualified immunity.

For all of these reasons, as described in detail below, the Motion should be granted.

## II. PROCEDURAL HISTORY

On March 21, 2017, Plaintiff Joel Doe filed a Complaint [Docket No. 1] asserting causes of action against the School District, Faidley, Cooper and Foley for alleged violations of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 and Title IX (20 U.S.C. §§ 1681, 1688), as well as Pennsylvania tort law. On April 3, 2017, a Motion to Intervene [Docket No. 7] was filed on behalf of Aidan DeStefano and the Pennsylvania Youth Congress Foundation ("PYCF"). An Amended Complaint [Docket No. 8] was filed on April 18, 2017, adding three additional Plaintiffs – Mary Smith, Jack Jones and Macy Roe. Counsel for all Defendants filed a Waiver of Service of Summons [Docket No. 15], providing all Defendants until June 16, 2017, to respond to the Amended Complaint. On May 26, 2017, PYCF filed an Answer to the Amended Complaint [Docket No. 30]. The accompanying Motion to Dismiss now follows.

## III. STATEMENT OF QUESTIONS INVOLVED

1. Is the Plaintiffs' Fourteenth Amendment claim under Section 1983 subsumed by their Title IX claim under the *Sea Clammers* doctrine? Suggested answer: Yes.

2. Does Pennsylvania's Political Subdivision Tort Claims Act preclude the Plaintiffs' intrusion upon seclusion claim? Suggested answer: Yes.

3. Does Dr. Faidley have high public official immunity from all claims? Suggested answer: Yes.

4. Can Title IX claims be maintained against individual defendants in their official capacities separately from a claim against their employing entity? Suggested answer: No.

5. Do all individual Defendants have qualified immunity from damages under Plaintiffs' Title IX claim? Suggested answer: Yes.

## IV. FACTS

The Defendants rely, as they must, on the facts as presented by the Plaintiffs in the Amended Complaint, with key facts recounted in the accompanying Motion to Dismiss.

## V. ARGUMENT

### A. Plaintiffs' Constitutional Claim Is Foreclosed By Their Title IX Claim

In this case, the Plaintiffs assert claims under both the Fourteenth Amendment and Title IX. However, they are unable to maintain both claims. The Supreme Court has made clear that where a federal statute provides its own comprehensive enforcement scheme, Congress intended to foreclose a right of action under Section 1983. *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20-21 (1981). Indeed, the general rule of statutory construction is that a precisely drawn, detailed statute preempts more general remedies. *See generally Preiser v. Rodriguez*, 411 U.S. 475 (1973).

The Third Circuit has addressed the applicability of the *Sea Clammers* doctrine to cases in which a plaintiff asserts a claim under Title IX and the federal Constitution. In *Pfeiffer v. Marion Center Area School District*, 917 F.2d 779, 789 (3d Cir. 1990), the plaintiff complained that she had been improperly dismissed from an honor society because of her pregnancy. *Pfeiffer*, 917 F.2d at 781-83. The plaintiff brought suit under Title IX as well as § 1983 for violations of her constitutional rights. *Id.* at 783. The lower court found the plaintiff's constitutional claims were subsumed by her statutory claim under Title IX and otherwise barred by the *Sea Clammers* doctrine. The Third Circuit agreed. *Id.* at 789.

Additionally, in *Williams v. School Dist. of Bethlehem*, 998 F.2d 168, 176 (3d Cir. 1993), a plaintiff challenged his exclusion because of his sex from a girl's field hockey team. *Williams*, 998 F.2d at 170. The plaintiff brought suit under Title IX as well as § 1983 for violations of his constitutional rights. The plaintiff also argued that the *Sea Clammers* doctrine is inapplicable where, as here, the plaintiff seeks an injunction. However, the court noted that the plaintiff in *Pfeiffer* had also sought an injunction, and that the plaintiff could not maintain his constitutional claims against the defendant because they were subsumed by his Title IX claim. *Id.* at 176; *see also Seneway v. Canon McMillan School Dist.*, 969 F. Supp. 325, 330-31 (W.D. Pa. 1997) (dismissing § 1983 claims as subsumed within Title IX claims).

Pennsylvania federal courts have generally only declined to apply the *Sea Clammers* doctrine in cases where plaintiffs allude to a Title IX claim, but do not actually assert one. See, e.g., *Combs v. School Dist. of Phila.*, No. Civ. A. 99-3812, 1999 WL 1077082, at *4 (E.D. Pa. Nov. 29, 1999) (refusing to apply *Sea Clammers* doctrine because, "while the Complaint does make reference to Title IX, it is clear that Plaintiff has no intention of raising a Title IX claim. The Complaint states a Section 1983 cause of action, and this court will treat it that way."). Accordingly it is clear that whenever, as here, a plaintiff brings both a Section 1983 constitutional claim and a Title IX claim, the constitutional claim is subsumed by the Title IX claim. Therefore, the Plaintiffs' Section 1983 claim must be dismissed.

    **B.**     **Plaintiffs' Intrusion Upon Seclusion Claim Is Barred By Pennsylvania's Political Subdivision Tort Claims Act**

The Amended Complaint also states a tort claim for intrusion upon seclusion. However, Defendants are entitled to immunity against this claim under Pennsylvania's Political Subdivision

Tort Claims Act, 42 Pa. C.S. § 8541 (the "Tort Claims Act"). However, even if the Defendants are found to not have immunity, the Plaintiffs fail to meet the requirements to state their claim.

Under the Tort Claims Act, an employee of a local agency, including a public school district, is entitled to immunity for actions taken within the scope of his or her employment, unless: (1) the employee's acts fall into one of eight enumerated categories of negligence in 42 Pa. C.S. § 8542(b) (relating to: vehicle liability; care, custody or control of personal property; real property; trees, traffic control and street lighting; utility service facilities; streets; sidewalks; and care, custody or control of animals); or (2) the employee's acts constitute "a crime, actual fraud, or willful misconduct" under 42 Pa. C.S. § 8550. *Spiker v. Whittaker*, 553 Fed. App'x 275, 281 n.6 (3d Cir. 2014). The phrase "willful misconduct" is synonymous with "intentional tort" and requires that a plaintiff establish that the actor "desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue." *Coulter v. Graham*, No. 2421 C.D. 2010, 2011 WL 10876836, at *3 (Pa. Commw. June 14, 2011); *see also Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). The Boyertown Area School District is a "local agency" under the Tort Claims Act. *See* 42 Pa. C.S. § 8501 (defining "[l]ocal agencies" as "a government unit other than the Commonwealth government"). Thus, the individual Defendants, as employees of the School District, are entitled to immunity as provided in the Act unless one of the exceptions applies.

The alleged actions of Defendants clearly do not fall within any of the eight enumerated categories of negligence in § 8542(b). Moreover, Plaintiffs have not alleged that Defendants engaged in a "crime" or "actual fraud." Therefore, Plaintiffs must prove that the Defendants' actions constituted willful misconduct. This they cannot do. There is no allegation in the Amended Complaint that any of the Defendants desired to have any transgender student witness

any of the Plaintiffs in a state of undress nor that the Defendants thought nor that it was substantially certain to occur. Indeed, the Plaintiffs had the opportunity to use other changing facilities and restrooms to avoid the situation entirely. All Defendants are therefore entitled to immunity under the Tort Claims Act.

Pennsylvania courts have routinely held that the Tort Claims Act shields school district and their employees from invasion of privacy claims, including intrusion upon seclusion. *See, e.g.*, *Smith v. School Dist. of Phila.*, 112 F. Supp. 2d 417, 424 (E.D. Pa. 2000) ("All such claims are treated as claims against municipal entities and are barred under Pennsylvania law."); *see also Byars v. School Dist. of Phila.*, 942 F. Supp. 2d 552, 562 (E.D. Pa. 2013) (finding numerous invasion of privacy claims barred by Tort Claims Act).

Even if the Defendants lack immunity, the Plaintiffs are still unable to prove their intrusion upon seclusion claim. Intrusion upon seclusion may occur by (1) physical intrusion into a place where the plaintiff has secluded himself or herself; (2) use of the defendant's senses to oversee or overhear the plaintiff's private affairs; or (3) some other form of investigation or examination into plaintiff's private concerns. *Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1383 (Pa. Super. 1984).

There is no allegation in the Amended Complaint that the individual Defendants physically intruded on any of the Plaintiffs nor used their senses to oversee or overhear any of the Plaintiffs' private affairs. Accordingly, the Defendants are presumably alleging that the Defendants made some other form of investigation or examination into the Plaintiffs' private concerns. However, no factual averments have been made to support such a claim. Indeed any possible alleged "intrusion" against any of the Plaintiffs was merely an indirect result of the Defendants' decision to allow transgender students to use the restrooms and locker rooms aligned with their gender

identity. Therefore, any such intrusion was not willful misconduct. The Fourth Amendment does not protect all subjective expectations of privacy, but only those that society recognizes as "legitimate." *New Jersey v. T.L.O.*, 469 U.S. 325, 338 (1985). Legitimate privacy expectations are even less with regard to students in school locker rooms. School sports require "suiting up" before each practice or event, and showering and changing afterward. Public school locker rooms, the usual sites for these activities, are not notable for the privacy they afford. As the United States Court of Appeals for the Seventh Circuit has noted, there is "an element of 'communal undress' inherent in athletic participation," *Schaill by Kross v. Tippecanoe County School Corp.*, 864 F.2d 1309, 1318 (7th Cir. 1988).

Furthermore, liability attaches only when the intrusion is substantial and would be highly offensive to "the ordinary reasonable person." *Id.* at 1383-84. In this case, Plaintiff Doe has acknowledged that he was provided the option to change in the nurse's office greatly reducing any possible intrusion. Am. Compl., ¶ 66. Accordingly, the Plaintiffs' intrusion upon seclusion claim is precluded by the Tort Claims Act and should be dismissed.

### C. Dr. Faidley Is A High Public Official And Has Immunity On All Claims

Under the doctrine of high public official immunity, Dr. Faidley, as superintendent, is immune from all of the Plaintiffs' claims in this case. The doctrine arises under Pennsylvania common law and protects high public officials from suits for damages for actions taken or statements made in the course of their official duties. *Durham v. McElynn*, 772 A.2d 68, 69 (Pa. 2001); *Matson v. Margiotti*, 88 A.2d 892, 895 (Pa. 1952).

Pennsylvania courts have routinely recognized that school superintendents, such as Dr. Faidley, qualify as high public officials. *See, e.g.*, *Petula v. Mellody*, 631 A.2d 762 (Pa. Commw. 1993); *Matta v. Burton*, 721 A.2d 1164, 1166 (Pa. Commw. 1998).

The immunity even goes so far as to cover statements or actions motivated by malice when they are made or taken within the scope of the official's duties or authority. *Matson*, 88 A.2d at 895. The doctrine of absolute privilege for high public officials under Pennsylvania law:

> is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.

*Heller v. Fulare*, 454 F.3d 174, 177 (3d Cir. 2006) (*quoting Matson*, 88 A.2d at 895). The privilege is not for the benefit of the official, but to protect "'society's interest in the unfettered discussion of public business and in full public knowledge of the facts and conduct of such business.'" *Lindner v. Mollan*, 677 A.2d 1194, 1196 (Pa. 1996) (*quoting Montgomery v. City of Phila.*, 140 A.2d 100, 103 (Pa. 1958)). Although ordinary local agency employees can be held liable if they have engaged in crime, actual fraud, actual malice or willful misconduct, high public officials enjoy absolute immunity even when willful misconduct is alleged. *See Lindner*, 677 A.2d 1194 (Pa. 1996); *Kuzel v. Krause*, 658 A.2d 856 (Pa. Commw. 1995).

A review of the Amended Complaint shows that the alleged conduct of Dr. Faidley is merely that he implemented a policy regarding transgender students' use of restrooms and locker rooms in the School District (Am. Compl., ¶ 20), which is well within the scope of his employment as superintendent. The plaintiff has not alleged any facts that would indicate that Dr. Faidley's conduct fell outside the ambit of the scope of his public duties. And indeed, the Plaintiffs allege that "[a]t all times relevant to the events described herein, Superintendent Faidley acted within the scope of his employment as an employee, agent, and representative of the School Board." Am. Compl., ¶ 20. Thus, high public official immunity applies, and all claims against Dr. Faidley must be dismissed.

### D. Title IX Claims Can Not Be Brought Against Individuals

The Plaintiffs' Title IX claim should be dismissed against Dr. Faidley, Dr. Cooper and Dr. Foley because Title IX claim can only be brought against an entity receiving federal funds, and because the claim against the individual Defendants in their official capacities is in reality a claim against the School District.

In *Cannon v. University of Chicago*, 441 U.S. 677, 709-17 (1979), the U.S. Supreme Court held that private victims of sex-based discrimination could seek redress under Title IX even though the applicable statutory language provided only for the discontinuation of an offending entity's federal financial assistance. Congress subsequently validated the holding in *Cannon* by abrogating the states' Eleventh Amendment immunity in actions brought under Title IX by private individuals. 42 U.S.C. § 2000d-7(a). In light of this action by Congress, it is "beyond dispute" that private individuals can sue recipients of federal financial assistance under Title IX. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). The recipient of federal financial assistance in this situation is ordinarily the school or educational entity that employs an offending teacher or administrator. However, a plaintiff cannot invoke Title IX to sue an individual teacher or school official. *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257 (2009).

Similarly, the Supreme Court has emphasized that official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), (*quoting Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978)). Accordingly, the Plaintiffs' official capacity claims against the individual Defendants are really just another way of stating the claim against the School District. As such, the Title IX claims should be dismissed against the individual Defendants.

### E. The Individual Defendants Are Protected By Qualified Immunity

Qualified immunity entitles governmental officials performing discretionary functions to immunity when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity has been applied to relieve government officials from liability in Title IX cases. *See Seneway*, 969 F. Supp. at 333 (granting summary judgment to school principal on Title IX claim based on qualified immunity).

A school administrator would lose his immunity only if "he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate . . . constitutional rights . . . or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . ." *Butz v. Economou*, 438 U.S. 478, 498 (1978). In short, "[a] government official is entitled to qualified immunity if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Berg v. County of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000) (*quoting Harlow*, 457 U.S. at 818).

In *Saucier v. Katz*, the Supreme Court established a two-step process for courts examining the qualified immunity of government officials. 533 U.S. 194 (2001). "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (*citing Saucier*, 533 U.S. at 201). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.*

Each of the individual Defendants in this case is entitled to qualified immunity unless their conduct violated a clearly established constitutional right. *See Anderson v. Creighton*, 483 U.S.

635, 640 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640. "The qualified immunity doctrine gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Berg*, 219 F.3d at 272.

Plaintiffs allege that they have a constitutional right to be free from a sexually harassing environment resulting from sharing restrooms and/or locker rooms with transgender students of the opposite biological sex. Am. Compl., ¶¶ 180-81. It is far from clear that any such right exists. However, even assuming that such a right exists, the Defendants are still entitled to qualified immunity unless Plaintiffs can show that the right was clearly established such that the Defendants understood that they were violating those rights. In this case, the Defendant are entitled to qualified immunity if it was reasonable for them to believe that their actions were not violating the Plaintiffs' rights.

That reasonable standard is found in the guidance provided by the Departments of Education and Justice in 2016. On May 13, 2016, the DOJ and DOE issued a "Dear Colleague Letter on Transgender Students" (the "2016 Letter"), attached to the Motion as Exhibit 1, summarizing public schools' obligations regarding transgender students under Title IX and explaining how those departments evaluate a school's compliance with those obligations. The 2016 Letter began by giving an overview of school districts' responsibilities under Title IX:

> As a condition of receiving Federal funds, a school agrees that it will not exclude, separate, deny benefits to, or otherwise treat differently on the basis of sex any person in its educational programs or activities unless expressly authorized to do so under Title IX or its implementing regulations.[1] The Departments treat a student's gender identity as the student's sex for purposes of Title IX and its implementing regulations. This means that a school must not treat a transgender student differently from the way it treats other students of the same gender identity. The

---

[1] 34 C.F.R. §§ 106.4, 106.31(a).

Departments' interpretation is consistent with courts' and other agencies' interpretations of Federal laws prohibiting sex discrimination.

DOJ/DOE, Dear Colleague Letter on Transgender Students, p. 2. The letter went on to specifically address the issue of restrooms and locker rooms:

> ***A school may provide separate facilities on the basis of sex, but must allow transgender students access to such facilities consistent with their gender identity.***[2] A school may not require transgender students to use facilities inconsistent with their gender identity or to use individual-user facilities when other students are not required to do so. A school may, however, make individual-user options available to all students who voluntarily seek additional privacy.

*Id.*, p. 3 (emphasis added). DOE and DOJ posited that the 2016 Letter was not making any change to the existing law and regulations, but was merely providing "information and examples to inform recipients about how the Departments evaluate whether covered entities are complying with their legal obligations." *Id.*, p. 1. Accordingly, the School District and the individual Defendants not only reasonably believed they were not violating the Plaintiffs' rights by allowing transgender students to use restrooms and locker rooms aligned with their gender identity, they had a directive issued by the federal government that they were *required* to do so.

On February 22, 2017, DOE and DOJ issued another Dear Colleague Letter addressing the use of restrooms and locker rooms by transgender students (the "2017 Letter"), attached to the Motion as Exhibit 2. The 2017 Letter rescinded the guidance provided in the 2016 Letter and noted conflicting interpretations by courts of the term "sex" in the regulations issued pursuant to Title IX, and stated, "the Departments believe that, in this context, there must be due regard for the primary role of the States ***and local school districts*** in establishing educational policy." 2017 Letter, p. 1 (emphasis added). Therefore, the Defendants' decision to continue to allow transgender students to use facilities aligned with their gender identity was certainly reasonable

---

[2] 34 C.F.R. § 106.33.

even after issuance of the 2017 Letter. According, the individual Defendants are entitled to qualified immunity on the Plaintiffs' Title IX claim.

## VI. CONCLUSION

For all of the reasons stated above, Defendants respectfully request that this Court grant the Motion.

Respectfully submitted,

Date: June 16, 2017

*/s/ David W. Brown*
Michael I. Levin, Esq. (PA 21232)
David W. Brown, Esq. (PA 201553)
LEVIN LEGAL GROUP, P.C.
1800 Byberry Road, Suite 1301
Huntingdon Valley, PA 19006

*Attorneys for Defendants*